**ASSOCIATED INDEPENDENT OWN-ER–OPERATORS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 22544.

United States Court of Appeals
Ninth Circuit.

Feb. 18, 1969.

Kenneth M. Schwartz (argued), of Arnold, Smith & Schwartz, Los Angeles, Cal., for petitioner.

William F. Wachter (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Marjorie S. Gofreed, Washington, D. C., for respondent.

L. D. Mathews, Jr. (argued), of Brundage & Hackler, Los Angeles, Cal., for intervenor.

Before BROWNING, DUNIWAY and HUFSTEDLER, Circuit Judges.

DUNIWAY, Circuit Judge:

Petitioner Associated Independent Owner-Operators, Inc. (AIOO) asks this court to review and set aside a decision of the National Labor Relations Board which dismissed a complaint based upon charges filed by petitioner, 168 N.L.R.B. No. 112.

AIOO filed two charges of violations of sections 8(b) (4) (ii) (A) and (B) of the National Labor Relations Act as amended against the International Union of Operating Engineers, Local Union No. 12 (Union). The charges were that the Union had threatened several contractors in the construction industry with strikes and picketing, with an object of forcing the contractors to cease doing business with two non-union "owner-operators" [1] working on the job site, and of forcing them to join the Union.

The Board found that the owner-operators were "employees" of the contractors involved. It dismissed the complaint because, if the owner-operators were employees as the Board found, there could have been no "cessation of business" within the meaning of section 8(b) (4), and no object of forcing a "self-employed person" to join a union as alleged in the complaint. The only issue presented to us is whether the Board properly found that the owner-operators were employees of the contractors.

There is no dispute as to the facts— i. e., no conflict in the evidence—relating to this issue. Thus the only question before us is whether the Board correctly applied a proper legal standard in deciding the question before it. We therefore first determine the proper standard to be applied.

---

1. AIOO is a "general employer's association composed of self-employed people."

The two owner-operators involved are members of AIOO.

Section 2(3) of the Act provides in relevant part that the term "employee" shall not include "any individual having the status of an independent contractor." 29 U.S.C. § 152(3).

The Supreme Court has recently considered the meaning of this language in NLRB v. United Insurance Co., 1968, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083. It there held that

"[t]he obvious purpose of this [provision] * * * was to have the Board and the courts apply general agency principles in distinguishing between employees and independent contractors under the Act." (p. 256, 88 S.Ct. p. 989.)

And in discussing the application of that standard, the Court also said:

"The Board examined all of these facts and found that they showed the debit agents to be employees. This was not a purely factual finding by the Board, but involved the application of law to facts—what do the facts establish under the common law of agency: employee or independent contractor? It should also be pointed out that such a determination of pure agency law involved no special administrative expertise that a court does not possess. On the other hand, the Board's determination was a judgment made after a hearing with witnesses and oral argument had been held and on the basis of written briefs. Such a determination should not be set aside just because a court would, as an original matter, decide the case the other way. As we said in Universal Camera Corp. v. NLRB, 340 U.S. 474, [71 S.Ct. 456, 95 L.Ed. 456], 'Nor does it [the requirement for canvassing the whole record] mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.' 340 U. S. at 488 [71 S.Ct. at 465]. Here the least that can be said for the Board's decision is that it made a choice be-

tween two fairly conflicting views, and under these circumstances the Court of Appeals should have enforced the Board's order. It was error to refuse to do so." (p. 260, 88 S.Ct. p. 991.)

The common-law agency test rests primarily upon the amount of supervision that the putative employer has a right to exercise over the individual, particularly regarding the details of the work. NLRB v. Servette, Inc., 9 Cir., 1962, 313 F.2d 67, 71. All incidents of the given relationship must be assessed to determine whether "the person for whom the work is done has the right to control and direct the work, not only as to the result accomplished by the work, but also as to the details and means by which that result is accomplished, * * *." (NLRB v. Phoenix Mut. Life Ins. Co., 7 Cir., 1948, 167 F.2d 983, 986, 6 A.L.R.2d 408) and therefore that the individual doing the work should be denominated an employee. See also NLRB v. Keystone Floors, Inc., 3 Cir., 1962, 306 F.2d 560; United Insurance Co. v. NLRB, 7 Cir., 1962, 304 F.2d 86; Restatement (Second) of Agency § 220(1) (1957). Subdivision (2) of that section of the Restatement lists ten "matters of fact" which, "among others, are considered." Some of these we will mention as we consider the undisputed facts of this case in the light of the foregoing principles.

The two owner-operators, Vance and Watson, do grading and excavating work in the construction industry with pieces of equipment known as "skip-loaders." Vance owns his tractor and skip-loader, and rents a dump truck when necessary. Watson owns his own truck, trailer, and skip-loader. Each pays his own costs, i. e., equipment rental or cost of equipment and depreciation, insurance, fuel, repairs, and services. These are indicia that each is an independent contractor. (Restatement, supra, § 220(2) (e), and comment k.) Each gets work through his own solicitation and referrals from contractors and friends. Vance also obtains work through an equipment company which also advertises for him, does

his billing, and provides telephone service and parking for his equipment, all for a fee of 10% of Vance's gross earnings. In the year preceding the filing of the charges, Vance worked for about 100 customers including contractors and home owners, and Watson worked for about 75 different persons. The customers who paid them made no deductions for social security or income tax. AIOO, not the customers, makes available life, accident, and equipment insurance programs. These factors, too, are indicia that the two are independent contractors. (Restatement, *supra*, § 220(2) (b), (i).)

For about three months in 1966, Watson's services were used by three contractors on a shopping center project in Glendale, California. Originally referred to one contractor by "an excavating friend who couldn't make the job," Watson thereafter did grading work for all three of them, shifting back and forth as his services were required and receiving his assignments from the respective job superintendents. Watson's work consisted essentially of grading definite areas, the boundaries and levels of which had previously been staked out by acknowledged employees of the contractors. "[He] would grade out one [section], and they would hand grade it or lay their steel and pour it, and [he] would come in and do the next one." When he finished each piece of work, he checked with the superintendent to see if it was satisfactory and received directions as to what to do next.

In August 1966, Vance worked for a subcontractor engaged in shoring and underpinning work at a construction project in Los Angeles. His job was to haul loose dirt away from holes being drilled by a drill rig operator. When Vance reported for work, a supervisor of the subcontractor told him that his job would be to remove the loose dirt, keep it from dropping back into the holes, and stay ahead of the drill rigs. The supervisor told Vance where to dump the dirt and what his hours would be. Pursuant to these instructions, Vance co-ordinated his activities with those of the drill rig operators, taking the same lunch breaks and working the same hours that they did.

Each man was paid on an hourly basis, which, standing alone, is some indication that each was an employee (Restatement, *supra*, § 220(2) (g)). But here what each received can hardly be considered as a wage or salary, because, as we have seen, it also covered the use of valuable equipment, and from it the man had to pay the expenses mentioned. Each man, not the contractors for whom he did work, set the rate of remuneration. Further, the method the contractors used in paying each was not that used for paying acknowledged employees. Nothing was withheld for taxes. The contractors' supervisors kept no "timeclock" records for either man as they did for the other workers. Rather, Vance and Watson each submitted his own statement of hours worked to the supervisors who approved the time and forwarded the billing to the contractor's office.

Each was employed only for as long as was required to do a specific job. No continuing relationship was implied. This again indicates a relationship of independent contractor. (Restatement, *supra*, § 220(2) (f), and comments h, j.) While each man might be asked to perform similar jobs in the future, his being so asked would depend on his ultimate job performance. Such a possibility of being asked to do similar work in the future provides no inference that the man worked under a continuing control by the contractor, notwithstanding the Board's contrary conclusion. It is a possibility on which the continued success of any independent contractor must rest.

Each was engaged in a distinct occupation (Restatement, *supra*, § 220(2) (b)), and each was a skilled operator (id., § 220(2) (d)), which is again some evidence of independent contractor status. Their specialty, piece-work grading and excavating, was recognized by contractors and home owners in the area. The people who engaged in this occupa-

tion worked without supervision at least insofar as they performed jobs for home owners. (Id., § 220(2) (c).) Even the contractors' supervisors exercised negligible supervision over Vance or Watson after initial instructions regarding the job to be done had been given. Actual exercise of control or lack of it is some evidence of the right which the contractors had to exercise such control.

The Board, however, found employee status. It said that the supervisors' "simple description of the job assignment limited the manner and means to be used to accomplish the job." This is a reference to the fact that Watson's grading job had been laid out by stakes, and that Vance's dirt-moving job depended on the drilling operation. But these were descriptions of what the supervisors wanted done, not of how the men were to do it. And there is no evidence that the supervisors either had the right to or did exercise any other control over the details of the work. The Board says that the men were "engaged to perform duties that could have been assigned to acknowledged employees of the contractors." There is no evidence whatever to support this statement. The record indicates that the contractors had no other grading or similar earthmoving operations in progress, had no equipment to

perform such operations, and hired these men and their equipment because they did not have regular crews or equipment to do the work. If the Board's test were good law, many bona fide independent contractors would be transmuted into employees, just because the other party to the contract "could have" done the work with his own employees, even though he in fact did not do so. It was this kind of legal legerdemain that Congress sought to prevent when it enacted section 2(3). See NLRB v. United Ins. Co., *supra*, 390 U.S. at p. 256, 88 S.Ct. 988.

The Board seems to have relied primarily upon the nature of the work done. But that is not the test, it is the extent of the right to control the manner of doing it, of the details of the work, that is determinative.

In short, in this case we find that there is no substantial evidence on the record considered as a whole to support the Board's findings.[2] In this respect, NLRB v. United Ins. Co., *supra*, is in sharp contrast. In that case there was more than ample evidence of exercise of control over the details of the work; here there is no such evidence. There, the Board was confronted with a choice between "two fairly conflicting views." Not so here.

2. The Board and Intervenor Union make the point that Vance and Watson are not licensed contractors in California and that the only exemption from California's Contractors' License Law which they could use is the one for "employees." Cal.Bus. & Prof.Code, §§ 7026, 7053. Several cases under the California Contractors' License Law have found that men engaged in grading and similar excavating work were "employees." See, e. g., Borello v. Eichler Homes, Inc., 1963, 221 Cal.App.2d 487, 34 Cal.Rptr. 648; Johnson v. Silver, 1958, 161 Cal.App.2d Supp. 853, 327 P.2d 245.

But California's Contractors' License Law imposes three rather severe penalties for failing to obtain a license where a license is required: Section 7028 makes a violation of the law a misdemeanor, section 7031 prevents a violator from bringing in state courts an action which arises out of construction activity, and

section 7028.3 provides that a violator is subject to an injunction restraining further violations. The courts have not construed the contractor-employee distinction in the California statute as they would normally construe a codification of the common law. As the court said in Jackson v. Pancake, 1968, Cal.App., 72 Cal.Rptr. 111, 113-114: "But the penalties are harsh and there has been no tendency by the courts to overly liberalize the statute's application. Contracts of employment—labor hire—and sales of materials by express exceptions are outside the interdictions of the contractors' licensing act. * * *" See also Lantipac, Inc. v. Superior Court, 1966, 64 Cal. 2d 278, 49 Cal.Rptr. 676, 411 P.2d 564; People v. Vis, 1966, 243 Cal.App.2d 549, 52 Cal.Rptr. 527. Thus, decisions under the California licensing law are not persuasive on the point at issue here.

The Board's order is vacated and the matter is remanded to the Board for further proceedings consistent with this opinion.