**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MONROE AUTO EQUIPMENT CO., HARTWELL DIVISION, Respondent.**

**No. 27430.**

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1969.

Rehearing Denied March 26, 1970.

Coleman, Circuit Judge, dissented.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert A. Giannasi, Madge F. Jefferson, Attys., N.L.R.B., Washington, D. C., Walter C. Phillips, Director, N.L.R.B., Atlanta, Ga., for petitioner.

Nelson, Harding, Richling, Leonard & Tate, John E. Tate, William A. Harding, Lincoln, Neb., and Joseph S. Skelton, Hartwell, Ga., for respondent.

862

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge.

This case appears to be a sequel to National Labor Relations Board v. Monroe Auto Equipment Company, 5 Cir. 1968, 392 F.2d 559, in more respects than merely a reference to the earlier case as relevant to our consideration of the employer's attitude towards the union. In the earlier case this court affirmed the Labor Board's decision, which in turn adopted and affirmed the trial examiner's findings and recommendations that Monroe had been guilty of violating Section 8(a) (3) of the National Labor Relations Act by transferring for discriminatory purposes two employees who had been union observers at a representation election.

This case also arises because Monroe transferred an employee, William J. Phillips, who had been working for the company for more than five years, without notice and without assigning any reason for the action, during the month following his acting as one of two union observers during an election which the union won in March, 1966.

There is no dispute that Phillips was very active in the campaign for the union, and, following the election, he solicited many employees and was successful in obtaining about one hundred signed union membership cards.

The facts as found by the trial examiner included the following: About three days after the election, foreman James Smith told an operator of a machine located near Phillips' work station, Furman Whitworth, not to "buddy up with [Phillips] anymore." Foreman Smith received instructions from his superiors that if Phillips was "caught loafing on the job to go through the regular procedure as [he] would any other one." Smith also received similar instructions in regard to several other employees when Superintendent Benny Reed told Smith to "watch all [the union people] and to get rid of the union people as well as other people if they got out of step, not to be scared to discipline them." Thereafter, an employee named Cole, who had been operating a rewelding machine, was given instructions on Phillips' machines, and on April 22, 1966, the night superintendent told Phillips that he was being transferred that night to operate Cole's machines. These were rewelding machines and were unlike those which Phillips had been working on. Phillips objected, and, the conversation being near the end of the week, he was given until the following Monday to make the transfer. On Monday Phillips reported for work and was told to run Cole's rewelding machine. He objected, but the plant superintendent said that this was all they had for him and if he did not want the job the company would have to discharge him.

The company, of course, contends that the power to transfer employees freely, especially if there is no reduction in pay and no other hardships involved, which might justify a grievance of any kind, which was the case here, is the management's prerogative that cannot be the basis of a charge of discrimination. This is too broad a statement of the principle. No citation of authority is needed to restate the proposition that management prerogatives may be exercised freely, up to and including a discharge. On the other hand, it is too well known for the citation of authority to state that the management's prerogative to effect a discharge cannot be exercised if done for the illegal purpose of discriminating against an employee on account of protected activity. The company does not seriously challenge the proposition that if Phillips was, in fact, being transferred to a machine with which he was unfamiliar in order to discipline him for having engaged in union activities, this would amount to a violation of Section 8(a) (3). The causal connection between his refusal to accept such a transfer under those circumstances and his being discharged for failure to make the transfer is too clear to need any further proof of causation.

■ The employer stresses the fact that on the facts as found by the examiner, all of which were accepted and adopted by the Board, the examiner concluded that the transfer was not "pretextual" for the purpose of causing Phillips to refuse the transfer and thus be subjected to being fired. However, it is the Board's decision, not the examiner's, that we are required to review on a petition to enforce.

■ We conclude that in light of the previous similar conduct by this employer in transferring two union watchers at the polls for the impermissible purpose of discriminating against them, as we found to be the case in the earlier decision, 392 F.2d 559, and in light of the other circumstances related above, we cannot conclude that there was not substantial evidence on the record as a whole to support the Board's finding that the conduct of the employer in transferring Phillips, without explanation, and after the reference was made about him to other employees and the pointed reference to treating union members like everybody else so shortly after the election was for a discriminatory purpose.

The order will be enforced.

COLEMAN, Circuit Judge (dissenting).

I respectfully dissent.

The disgruntled employee was transferred to another job on the *same* shift and with the *same* pay. This was hardly discriminatory, unless an employee has a right to choose his work regardless of the needs or wishes of his employer. The effect of the majority decision, I fear, is that an employer cannot manage the internal operations of his shop if he has committed an unfair labor practice in some other instance. This is beyond the intent of the Act. I think the Trial Examiner, rather than the Board, applied the correct legal standard.

With deference, I would deny enforcement.