**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LENKURT ELECTRIC CO., Inc., Respondent.**

**No. 26786.**

United States Court of Appeals, Ninth Circuit.

April 28, 1972.

---

Paul J. Spielberg (argued), Joseph C. Thackery, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, Washington, D. C., Roy O. Hoffman, Dir., Region 20, San Francisco, Cal., for petitioner.

William F. Hoefs (argued), Ted W. Harris, of Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for respondent.

Before MERRILL and HUFSTEDLER, Circuit Judges, and PREGERSON,* District Judge.

MERRILL, Circuit Judge:

The National Labor Relations Board applies for enforcement of its order against Lenkurt Electric Co., Inc., of San Carlos, California, issued May 19, 1970, and reported at 182 N.L.R.B. 510. The Board concluded (1) that the company violated § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), by disciplining and threatening further disciplinary action—including discharge—against its employee, Grant Jordan, then acting as union departmental steward, should he persist in engaging in protected activities; and (2) that the company further violated § 8(a) (3) and

---

* Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

(1) of the Act, 29 U.S.C. § 158(a) (3), (1), by transferring Jordan to a less desirable and less responsible job because of his having engaged in protected activities. Accordingly, the Board ordered the company to cease and desist from interfering with, restraining, or coercing employees in the exercise of their rights under the Act, and affirmatively ordered the company to reinstate Jordan in his former or a substantially equivalent position with any back pay to which he might be entitled.

The activities found by the Board to be protected were the solicitation by Jordan, as steward, of grievances from other employees. The record deals with two instances. After the first solicitation alleged by the company, Jordan was reprimanded by his foreman, who asserted that under the company's labor agreement stewards had no right to solicit grievances. The foreman stated that such solicitation "cannot be tolerated and will not happen again." Jordan protested that the labor agreement did not forbid solicitation of grievances by stewards.

The second instance of solicitation (involving employee Brown) followed in a few days. Jordan then was given a formal "employee file memorandum" reading as follows:

> "On April 28, 1969 you overstepped the role of departmental steward as defined in Section 2, Article III of the labor agreement. You did this by specifically soliciting a grievance. The role of a steward at Lenkurt is that of investigating and adjusting grievances, not soliciting them! We will expect you to conduct yourself as a steward as established by practice and called for by the labor agreement. Failure to do so in the future will mean disciplinary action, including termination."

Jordan appended to the memo the following remarks:

> "The issue which is being discussed in this memo was the investigation of a complaint (my own) leading up to a grievance (Employee in my group). I therefore am fully within my rights according to Article III Sec. 2 of the contract."

An hour after receiving the formal disciplinary notice, Jordan was transferred to a different—and allegedly tedious and menial—position in a different department.[1] The company did not permit him in this new position to continue to act as steward for his former department.[2]

The relevant portion of the collective-bargaining agreement reads as follows:

> "Stewards shall report to their immediate supervisors and request permission to leave the job before leaving work to conduct Union Business. Permission will always be granted, unless such action would seriously interfere with operations. In such instances, the supervisor will make arrangements for the Steward to leave the job as promptly as possible.
>
> Stewards will be allowed to conduct their Union business within their regularly established working hours, within their assigned areas of representation. Union business for this purpose is defined to mean the investigation of complaints that may lead to grievances, handling and adjustment of grievances, and attendance at meetings with representatives of the Employer."

The Board ruled that if the right of stewards to engage in specific protected

---

1. Although Jordan received the same rate of pay in his new position no contention is made that this in itself precludes a finding of a violation of § 8(a) (3) and (1). *Accord*, NLRB v. Monroe Auto Equipment Co., 420 F.2d 861 (5th Cir. 1969), cert. denied, 399 U.S. 927, 90 S.Ct. 2243, 26 L.Ed.2d 794 (1970).

2. This was the subject of a separate grievance which was unresolved at the commencement of the hearing in the instant proceedings. There was testimony before the trial examiner in the present proceedings that such cross-department union activity had been permitted in a prior case.

activity is to be forbidden by agreement, the agreement in this respect must speak with clarity. It concluded that the agreement here did not clearly forbid stewards from initiating complaints on behalf of others or in soliciting them to file grievances. We agree.

■ The company contends, however, that Jordan's solicitation of grievances was not action taken by him on behalf of the employees, but was done for the private purpose of embarrassing his foreman because of personal animosity entertained by Jordan. The trial examiner so concluded, but the Board, accepting the examiner's factual determinations as to what had happened, rejected his findings as to Jordan's purpose. The record read as a whole provides substantial support for the Board's determination in this respect.[3] There appears little doubt but that there was a reasonable basis for the two grievances which Jordan pressed.

■ The only evidence bearing on Jordan's malice and asserted purpose is the statement made by him when he obtained Brown's grievance: "We've got him [the foreman] now, he won't be able to squirm out of this." We do not find this to be anything more than an expression of pleasure that a grievance had been obtained that the foreman would have to concede was valid. Moreover, any suggestion of personal animosity contained in such a statement does not suffice to overturn the Board's finding of protected activity in Jordan's pressing a grievance in the interest of employees.[4]

■ The record does contain other evidence in the form of testimony by the foreman and the company's labor rela-

tions manager as to what certain employees had told them which indicates that the foreman may have had reason to believe that Jordan was seeking to embarrass him. This hearsay evidence was admitted, however, not to establish the truth of what was told but to explain the actions taken by the company. Consequently, it does not serve to establish that Jordan's actions were personally motivated and thus were not protected activity.

■ We conclude that on the record as a whole the factual evidence supports the Board's determination that Jordan's solicitation of grievances was protected activity.

■ Finally the company contends that the transfer of Jordan to another department was not an act of discipline imposed for solicitation of grievances but rather was to relieve a situation of tension between Jordan and his foreman. The trial examiner so inferred, and certainly the record provides support for this view. The Board, however, determined otherwise and the question is whether substantial evidence on the record as a whole supports its findings.[5] We conclude that it does.

The employee file memorandum says nothing about Jordan's alleged purpose to embarrass his foreman; its attention is directed solely at solicitation of grievances.[6] No efforts were made by the company to ascertain from Jordan the existence of ill feeling as a motivating factor or to corroborate the statements of employees made to the foreman (and those of the employee, Brown, which were repeated to the labor relations manager). Nothing in the record even suggests that Jordan sought the

3. See generally Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). See also note 5 infra.

4. See Falcon Plastics-Division v. NLRB, 397 F.2d 965, 967 (9th Cir. 1968).

5. See NLRB v. Miller Redwood Co., 407 F.2d 1366, 1369 (9th Cir. 1969); Falcon Plastics-Division v. NLRB, 397 F.2d 965 (9th Cir. 1968); NLRB v. Tom Johnson,

Inc., 378 F.2d 342, 344 (9th Cir. 1967). See also Santa Fe Drilling Co. v. NLRB, 416 F.2d 725, 729-730 (9th Cir. 1969). See generally Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

6. Compare Socony Mobil Oil Co. v. NLRB, 357 F.2d 662 (2d Cir. 1966).

filing of anything other than legitimate grievances.[7] That Jordan's apparent desire to embarrass his foreman was not the real basis for the company action was suggested by testimony of the company's labor relations manager. He stated that following the Brown incident a conference of company and union officials was held with regard to Jordan at which a company official "express[ed] his extreme displeasure that we had a steward who was out soliciting grievances." When counsel inquired of the witness respecting discussion of Jordan's alleged purposes he responded that "that was also brought in." The inference is plainly available that the company acted as it did because it objected to Jordan's solicitation of grievances and proposed to put a stop to it.

The order of the Board will be enforced.

7. *Contrast* NLRB v. Gibbs Corp., 284 F.2d 403 (5th Cir. 1960) ; Joanna Cotton Mills Co. v. NLRB, 176 F.2d 749 (4th Cir. 1949).