**Kaj KLING, an individual, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 73–2871.**

United States Court of Appeals, Ninth Circuit.

Jan. 2, 1975.

Winds Inc., tried to return to his job after a leave of absence that had begun in June of that year. The machinists union stripped him of his seniority rights. Rather than return to work without seniority, Kling left West Winds and thereafter filed an unfair labor practice complaint with the National Labor Relations Board. After a hearing, the administrative law judge concluded that the union had engaged in unfair labor practices by causing the constructive discharge of Kling and issued a recommended order requiring the union to pay damages and to cease and desist. On appeal the Board dismissed the complaint, finding that the union's actions were reasonable and were not improperly motivated. Our jurisdiction is based upon 29 U.S.C. § 160(f). We grant the petition for review, vacate the order of the NLRB and reinstate the order of the administrative law judge.

In June 1971 Kling asked for a two-month leave of absence. This request was formalized in a letter dated June 1. Shortly after Kling's departure, the shop steward told the employer he did not want Kling to return with full seniority, but stated no reasons. The company notified the union by both letter and telephone of Kling's leave. On July 22 Kling by letter to the employer requested and was granted an extension until August 15. On August 14 Kling's wife called the employer to request a second extension, which was also granted. Again a letter followed up the telephone request. The company promptly notified the union of each of these extensions.

In October the shop steward and another union representative told a company official that Kling should be treated as a "voluntary quit" and as such would lose his seniority rights. A letter of October 22, 1971, from the union advised the company that Kling had lost his seniority rights because he failed to inform the union of his first extension request "as provided in the agreement covering leaves of absence." When Kling finally

Albert J. Kline, San Rafael, Cal. (argued) Salle S. Soladay, San Rafael, Cal., for appellant-petitioner.

Alan Cirker (argued), of Gen. Counsel, NLRB, Washington, D. C., for respondent NLRB.

Before WRIGHT and CHOY, Circuit Judges, and BURNS,* District Judge.

OPINION

BURNS, District Judge:

In late October 1971, Kaj Kling, a long-time machinist employee of West

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

attempted to return to work, the union stated that Kling had failed to request an extension of his original leave of absence before it expired.

█ It is an unfair labor practice in violation of § 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act for a bargaining representative to act in an unreasonable, arbitrary, or invidious manner in regard to an employee. Miranda Fuel Company Inc., 140 NLRB 181 (1962). Though enforcement was denied by the Second Circuit, NLRB v. Miranda Fuel Co. (1963), 326 F.2d 172, the Board's *Miranda Fuel* doctrine appears to have won the day, as shown by the later favorable quotation in Vaca v. Sipes, 386 U.S. 171 at 177, 87 S.Ct. 903, 17 L.Ed.2d 842. Similar in its facts and compelling in its argument, *Miranda Fuel* should, in our view, control the result here. In both cases, there was evidence of undue pressure from fellow employees and from the union shop steward. In both cases, the seniority reduction was sought without valid reason and hence was an arbitrary exercise of union power.

██ The union offered one after another three different reasons why Kling should lose his seniority. All are flimsy. First, the shop steward claimed that Kling was a "voluntary quit." Kling's carefully requested leaves, each of which indicated his intention to return to the company, cannot be interpreted as a "quit." Second, the union claimed Kling violated the bargaining agreement by not reporting his leave to them. No provision of the agreement required such reporting. Nor was Kling aware of any union rule requiring him to report any request for a leave of absence or an extension thereof. Finally, the union claimed that Kling's first extension was invalid because it occurred after his original leave had expired. Evidence in the record is somewhat conflicting, but there is ample support for the finding of the administrative law judge, accepted by the Board, that the original leave was for two months. The first request for an extension was made well within that time. Upon this record we find no evidence to support the Board's finding that the union's actions were reasonable. Although decisions of the Board are entitled to great respect by a reviewing court, they will be set aside if the record clearly precludes the Board's decisions and the evidence calls for inferences contrary to those drawn by the Board. Universal Camera v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; NLRB v. Lenkurt Electric Co., 438 F.2d 1102 (9th Cir. 1971). We are convinced by a thorough review of the record that the union's arbitrary action in this case violated its duty of fair dealing with its members, Beriault v. Local 40, 501 F.2d 258, (9th Cir. 1974), and Member Kling's right of "fair representation." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Although it appeared from the briefs and from an exhibit (J–1) that on June 23, 1972, the union sent a letter to the company stating that effective June 26, 1972, Kling could return to work with his full seniority, we were told at oral argument that he had not in fact done so. The explanation given is that by resisting this appeal, the Board continued to insist that Kling had lost his seniority rights completely. Our decision makes it unnecessary for us to untangle this matter: the case will be remanded for further appropriate proceedings to determine Kling's monetary loss.