**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TRANSCONTINENTAL THEATERS, INC., Respondent.**

**No. 75–2505.**

United States Court of Appeals, Ninth Circuit.

Sept. 27, 1977.

As Amended Jan. 12, 1978.

Michael D. Stein, N. L. R. B., Washington, D. C., argued, for petitioner.

George King, of Boornazian, King & Schulze, Oakland, Cal., argued, for respondent.

Michael B. Roger, Levy, VanBourg & Hackler, San Francisco, Cal., argued, for intervenor International Assoc. of Theatrical & Stage Employees.

Before BROWNING and ANDERSON, Circuit Judges, and CRARY,* District Judge.

PER CURIAM:

The National Labor Relations Board (NLRB) seeks a judgment granting enforcement of the Board's order in the within matter. The Board's decision and order are reported at 216 NLRB 1110.

The Transcontinental Theaters, Inc. (respondent), is a Delaware corporation engaged in the general business of operating movie theaters in various states, including California. The respondent admits it is engaged in interstate commerce. It operates eight theaters in the San Francisco area and the theater here involved is a twin-screened theater (the theater) near San Francisco, in Fremont, California.

Cynatron Enterprises (Cynatron) is a general partnership, formed November 12, 1973, and licensed November 14, 1973, composed of partners Douglas Krutilek and Robert Shaw. Krutilek and Shaw have operated the theater pursuant to a one-year sublease between respondent and themselves, executed November 26, 1973, to take effect November 28, 1973. The Board agrees that Cynatron alone would not meet the Board's jurisdictional standards and unless it is a *joint employer* with respondent or operates the theater with respondent as a *single enterprise*, the Board would not assert jurisdiction over Cynatron.

The International Association of Theatrical and Stage Employees, Local 169 (Local 169), and respondent were parties to a collective bargaining agreement covering the theater involved in effect from August 15, 1972, to August 14, 1976. Under that agreement, Local 169 furnished the theater with two projectionists, one worked for 35 hours per week and the second 18 hours per week.

Service Employees International Union, Theater Janitors Union Local 121 (Local 121), had a similar contract with respondent under which it employed two janitors, who together worked a total of 42 hours per week. That agreement was in effect from February 15, 1973, to February 14, 1976.

The Fremont theater had operated at a loss since its opening in 1970. In 1971 the loss, before depreciation, was $3,215.00, in 1972 a loss of $2,862.00 and in 1973 at a loss of $46,182.00.

By letter dated November 7, 1973, respondent outlined to Krutilek and Shaw the terms and conditions under which it would sublease the theater. On November 12th, Krutilek and Shaw signed the letter accepting the terms thereof for Cynatron. The same day, respondent notified the Local Unions 169 and 121, by letters of a sublease of the theater to Cynatron to be effective November 28th and that the Union employees would be terminated as of that date. The letters to the Unions also referred to the sections of their contracts with respondent concerning notice of termination.

Respondent ceased operating the theater on November 28th, 1973, and Cynatron took over its operation on that date, pursuant to the sublease referred to above executed on November 26th.

The Board found that the respondent violated Section 8(a)(3), (1) of the National Labor Relations Act, as amended, by unilaterally changing the terms and conditions of employment of its employees as contained in the collective bargaining agreements with the Unions and that the respondent violated Section 8(a)(5), (1) of the Act by discharging the Union projectionists and janitors who were, at the time, represented by the Unions under existing contracts. The consolidated complaint filed by the Board's general counsel alleges that respondent and Cynatron continued to act as *joint employers* in the operation of the theater and that the joint employers were bound to abide by respondent's contracts with Locals 169 and 121. The Board concluded that respondent and Cynatron were *not* joint

---

* Honorable E. Avery Crary, Senior United States District Judge, Central District of California, sitting by designation.

employers but that the sublease left respondent in a position of ownership and control of the theater operation so as to make the partners in Cynatron the employees of respondent or, at best, agents or managers. 216 NLRB at 1113. We are not, therefore, concerned with a joint employer issue as alleged in the complaint.

Cynatron, a respondent before the Administrative Law Judge (ALJ), but not a party to the appeal herein, defended on the grounds the record did not establish a joint employer relationship, that the Board did not have jurisdiction over Cynatron's business operation and that Cynatron bargained in good faith with the Union.

Respondent contended and now contends that in subleasing the theater it was motivated by legitimate economic reasons and prior to entering into the sublease it gave the Unions ample opportunity to bargain relative to the decision to sublease and the effect on the employees involved. The record establishes that there had been a very good relationship between the Unions and respondent for many years prior to the sublease.

. After receipt of the November 12th letter from respondent, the business agent of Local 169, on November 20, 1973, conferred with Krutilek and Shaw. The Union took the position that respondent still operated and controlled the theater in partnership with Cynatron and remained obliged to abide by the terms of the bargaining agreement. Cynatron offered Local 169 one 6-hour shift per week for a projectionist but that was unacceptable to the Union. The same offer of one 6-hour shift per week was made to Local 121 but was also rejected, and Local 121 voted to picket the theater. The charges of each Union were consolidated in the complaint prepared by the general counsel.

It is stated by the Board in its decision, page 1111, that the sublease, which was for a period of one year with option to renew for that period, contained provisions usually found in a standard lease agreement with further provisions defining the relationship between the parties. Section 33 provides that the respondent may terminate the sublease upon seven days notice if, in the respondent's judgment, Cynatron is not operating the theater "in a proper and business like manner and in a manner not producing sufficient income." Section 34 provides that Cynatron pay the respondent $3,400.00 rent per month, 5% of the box office admissions and receipts over and above the said minimum monthly rental, and 5% of the gross receipts of the sale of merchandise, food and drinks. In addition, Cynatron was to pay respondent periodically an amount equal to 75% of the net profits as determined by respondent. The respondent was to determine the accounting periods for each year. Section 35 permits the partners to draw a collective salary of $250.00 per week as an operating expense. Section 36 says that the respondent and its agents will assist Cynatron in buying and booking films and in determining the program until such time as Cynatron has had sufficient experience. Under Section 37 respondent will provide the forms on which Cynatron is to record the daily box office receipts, weekly payroll, confectionery inventory and manager's weekly report. Respondent is authorized by Section 38 to enter the theater at all reasonable times to determine whether Cynatron is properly maintaining and operating the theater. Section 39 provides that should Cynatron not promptly pay all bills and obligations it incurs in the operation of the theater the respondent shall have the right to terminate the sublease on 7 days notice. Cynatron was not required to invest any capital or make any security deposit pursuant to its arrangements with respondent.

It is to be noted that the master lease between respondent and the owner of the theater requires the respondent to furnish the owner with monthly reports similar to those required by Cynatron to be made to respondent under Section 37 of the sublease, supra, and that the master lease similarly provides that respondent pay the owner $3,400.00 per month rent plus 10% of ticket receipts and 5% of refreshment receipts less the amount of the fixed minimum monthly rental of $3,400.00.

Cynatron has hired eight employees since its operation of the theater began. The partners have themselves operated the projectors and each draws $200 a week salary. They have retained a part time janitorial service at $120 per week.

The Board, with one member dissenting, rendered a decision contrary to that of the ALJ who had recommended and ordered dismissal of the portions of the consolidated complaint involved herein. The Board's decision does not cite any supporting authorities and rests primarily upon its conclusion that the respondent and Cynatron constituted a single integrated enterprise and that the partners were the employees of the respondent, issues not raised in the pleadings nor addressed during the administrative hearing. In holding that the respondent and Cynatron were a single enterprise, the Board found that the sublease allowed the respondent to maintain close and substantial control over Cynatron's day to day operations and permitted the two partners little leeway to assume the role of entrepreneurs. The Board found there was significance in the subleasing in (1) that the partners were not required to pay any deposit on equipment, all of which belonged to the respondent, or post a bond to cover the property with which they were entrusted, (2) that the sublease circumscribed the amount of profit Cynatron was permitted to make, (3) that respondent was obligated to provide forms upon which Cynatron was to make its daily report, which the Board said tied Cynatron's bookkeeping in with that of the respondent, and (4) the right was reserved to the respondent to assist Cynatron in buying and booking films and determining programs until Cynatron acquired sufficient experience and that, therefore, respondent had not relinquished its economic control and interest in the theater. Page 1112. As heretofore noted, the reports referred to in (3) above were required of respondent by the master lease.

As to respondent's control over Cynatron's labor relations, which may well be said to be a crucial issue, the Board found that the primary reason for respondent's decision to sublease the theater was that it was an unprofitable venture and that a major cause for that condition was its high labor costs, a factor of which was the wages and manning requirements of the collective bargaining agreements, and that in deciding to sublease the theater to Cynatron the respondent considered the fact that the partners were qualified to take over the work of the projectionists. The Board also found to be relevant to the matter of labor costs, the fact that respondent, by the letter of November 12th, supra, placed a ceiling on Cynatron's operating costs in that Cynatron was required to operate the theater within a mutually acceptable budget which included a ceiling on the weekly salaries that the partners could draw. The partner, Krutilek, testified, in substance, that the only purpose of this provision was to provide respondent with some gauge of Cynatron's proposed operations. This purpose is uncontradicted in the record and was obviously relied on by the ALJ. Since the ALJ is in the best position to observe the demeanor and to determine the veracity of the witnesses, reviewing courts give his report (findings), "such probative force as it intrinsically commands." *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 495, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951). The Board further found that the control given over Cynatron operations and labor costs was further evidenced by the respondent's right to cancel the sublease on 7 days notice whenever respondent determined the theater was not operated in a "proper and business like manner."

By maintaining a right to impose a ceiling on operating costs through the acceptable budget provisions, the Board concluded that the respondent had retained power to supervise and oversee the operations of the theater and could thus limit not only the number and kinds of employees to be hired but also the size of the labor budget. This was also the position taken by counsel for the Board during oral argument before this Court. The Board also concluded that the respondent, by limiting the number and kinds of employees to be hired as well as the size of the labor budget, had control of

Cynatron's labor relations. The Board held that therefore the partners were the employees of respondent or, at best, its agents or managers and that there was no arm's length removal of the operation of the theater from respondent.

■ In prior decisions the Board has treated separate entities as one employer when their operations and ownership are highly integrated. The principal factors the Board has considered in this regard are (1) interrelation of operations, (2) common management, (3) centralized control of labor relations and (4) common ownership or financial control. Emphasis has been placed on the first three factors. *Sakrete of Northern California, Inc.*, 137 NLRB 120, aff'd 332 F.2d 902, 905, Note 4 (9th Cir., 1964).

The Court of Appeals of the District of Columbia, in *American Federation of Television & Radio Artists v. N. L. R. B.*, 149 U.S.App.D.C. 272, 462 F.2d 887 (1972), was concerned with the relations between a television station and a newspaper, both owned by the Hearst Corporation. The Court found the television station and newspaper to be separate "persons" under the National Labor Relations Act and, after setting forth the facts as to the relationship of the two entities, which were more integrated than the respondent and Cynatron, the Court states:

"We think this summary of the evidence amply supports the Board's conclusion that at the time of the labor dispute WBAL and the News American were so independent of Hearst and so unrelated to each other that the News American was an unoffending employer within the meaning of the statute. True, the ultimate power to control each division belonged to Hearst, since each division manager was answerable to Hearst. As the Board correctly held, however, the test is not whether an unexercised power to control exists. There must be in addition such actual or active common control, as distinguished from merely a potential, as to denote an appreciable integration of operations and management policies.'

*Drivers, Chauffeurs and Helpers Local No. 639 (Poole's Warehousing, Inc.)*, 158 NLRB 1281, 1286 (1966). * * *

Here the record establishes that the Hearst Corporation's ultimate power to control has not been exercised." p. 892.

In *Gerace Construction, Inc.*, 193 NLRB 645 (1971), the Board held:

"A critical factor in determining whether separate legal entities operate as a single employing enterprise is the degree of common control of labor relations policies. Thus, the Board has found common ownership not determinative where requisite *common control was not shown*, and the Board has held with court approval that *such common control must be actual or active, as distinguished from potential control.*" [Footnotes with citations omitted.] [Emphasis added.]

The theater and equipment in the instant case belong to respondent and, although the respondent has the right to inspect the theater to see if it is being properly operated, there is no common management on a day to day basis and it does not appear inspections were made by respondent as authorized. Respondent has no ownership interest in Cynatron. Cynatron has its own business license, maintains its own bank accounts and books of account, is solely responsible for paying its own operating expenses, sets its own admission prices and bids for its own films. As stated in the consolidated complaint, Cynatron has hired, fired, disciplined and supervised the employees employed at the theater since November 28, 1973. The complaint also treats the respondent and Cynatron as separate business entities asserting that they are joint employers. Although, as noted above, respondent reserved the right to assist Cynatron in booking films and determining programing until Cynatron acquired sufficient experience, Cynatron did its own bidding for and booking of films and there is no evidence that respondent made any attempt to control Cynatron in this regard.

This Court, in the *Sakrete* case, 332 F.2d 902, supra, held that Sakrete of Northern California (SNC) was a single employer

with Sakrete, Inc., whose operations were within the Board's jurisdiction. There was identity of ownership and management in a single person responsible for the setting of labor policies of both companies and who participated in the labor negotiations. None of these factors are present in the case at bench.

The facts in cases where the Board has found there was *not* a single employer status are substantially more indicative of single employment than those in the instant case. See *Western Union Corporation*, 224 NLRB No. 25; *Frank N. Smith Associates*, 194 NLRB 212, 217–18 (1971); *Golf Course Inns of America, Inc.*, 199 NLRB 541. In the latter case, the Board held the common owner had the "potential" to control the labor relations policies at the individual golf courses but the record did not show that he had done so. The Board said there were other factors which militated against treating the enterprises as one for jurisdictional purposes, to wit:

"* * * there is no interchange of employees between the clubs, payrolls are separately maintained, purchases are separately and locally made, membership privileges are not interchangeable, and each club has a separate general manager * * * [who] controls the day to day operations of [each] club, directs employees in their daily routine and has the authority to hire and fire employees." p. 542.

In the *Southland Corporation Matter*, 170 NLRB 1339 (1968), the franchise agreement provided for many checks and controls by Southland, the owner and franchisor of the store, over one George, the franchisee and operator. Some of the controls were more stringent than those provided for in the within case. Southland did not exercise any control over the labor relations of the franchisee, which control was vested in the franchisee by the terms of the franchise agreement. In the instant case the respondent did not exercise any control over the labor relations of Cynatron, who conducted its own labor relations although not specifically vested with that right under the agreement with respondent. The Board concluded that, in the circumstances, Southland and George were not a single employer nor were they joint employers as had been urged in the petition of AFL–CIO.

The Board has also applied the test of employee versus independent contractor in considering the single employer issue. As it stated in *Clark Oil & Refining Corporation*, 129 NLRB 750 (1960):

"The test of independent contractor status is whether the employer retains the right of control over the manner of performance of the contractor." pp. 756–57.

It is well established that to create an employer-employee relationship the control, by the person for whom the project or contract is to be performed, over the person who is to do the work must be as to the specific manner and means by which the result sought is to be accomplished. *Brown v. N. L. R. B.*, 462 F.2d 699, 706 (9th Cir. 1972). In the *Brown* case, this Court reversed the Board's ruling that the dealers/distributors of newspapers were the employees of the publisher, the Hearst Corporation, observing:

"* * * the standards formulated by the Board in the cases in which it found dealers to be employees clearly indicate that the Dealers here are independent contractors rather than employees." (Cited cases in footnotes omitted.) pp. 702–03.

and at p. 703:

"The means used and the respective controls in accomplishing these goals are, however, highly material to the ultimate determination of employee or contractor status."

■ There is no substantial evidence in the instant case, as outlined above, to support the Board's conclusion that there is a single employer involved or that the partners in Cynatron were employees of respondent. We conclude that the ALJ was correct based upon the facts, prior Board and court decisions, that the relationship of independent contractor existed.

The ALJ notes in his decision that it is alleged in the consolidated complaint that the respondent controlled the labor relations policy of Cynatron by its right to determine operating costs, including labor costs of Cynatron. The ALJ then observes he found that respondent did, in effect, have the power to place a ceiling on the theater's operating expenditures, however, in his opinion the impact of the power is too remote and conjectural to warrant a finding that respondent had any meaningful control over Cynatron's labor relations policies. We agree, particularly in view of the lack of evidence that respondent ever made an attempt to control Cynatron's labor relations or policies through its authority to determine operating costs or otherwise.

Judge Kennedy, in dissenting, after enumerating facts as to the relations between respondent and Cynatron and observing that the respondent "never attempted to participate in or influence a labor relations decision by Cynatron," states at page 1118:

"All of which should leave one puzzled as to the reasons for prosecution of this case. But after more than 20 years of legal experience in the regions of this Board, my memory is refreshed by the trial attorney's candid concession on the record that:

'To be absolutely candid, one of the reasons I was having difficulty answering your questions is I have been unable to find the answers myself because some bright legal theoretician in Washington came up with these violations based on case citations from which inferences are drawn.' "

The propriety of overruling the Board as to inferences to be drawn from the facts should the evidence call for inferences to the contrary or if inferences are unreasonable in light of the record is discussed in *Kling v. N. L. R. B.,* 503 F.2d 1044 (9th Cir. 1975).

At page 1046 the Court states:

"Although decisions of the Board are entitled to great respect by a reviewing court, they will be set aside if the record clearly precludes the Board's decisions and the evidence calls for inferences contrary to those drawn by the Board. *Universal Camera v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; *NLRB v. Lenkurt Electric Co.,* 438 F.2d 1102 (9th Cir. 1971)."

This Court, in *Brown v. N. L. R. B.,* supra, stated at page 702:

"The application of agency principles to the facts of a case is a proper subject for judicial review, and we may affirm the Board's determination only if we can conscientiously say that it is supported by the record considered as a whole."

Whether the Board's determination, that respondent and Cynatron were a single employer or that Cynatron was not an independent contractor, was based on inferences it drew from the facts in the case or the Board's conclusions of law as applied to the facts as found by the Board, it would appear its decision is subject to review by this Court both as to whether it is supported by substantial evidence on the record as a whole and as to a reasonable drawing of inferences. The essential facts in this case are not in controversy but there is disagreement as to the inferences to be drawn from those facts and with respect to whether, under applicable law, the sublease and ongoing relationship between respondent and Cynatron resulted in a single business entity as concluded by the Board.

We conclude that there is insufficient evidence to support the Board's conclusion that Cynatron and respondent are a single employer or enterprise. Nor is there sufficient evidence that the two partners in Cynatron were either employees or agents of respondent. Instead, the record as a whole clearly indicates that Cynatron was an independent contractor whose control over labor and labor policies was completely separate from that of respondent.

A comment on one aspect of the dissent would seem to be in order. In discussing the issue of employee and independent contractor relationship, it is not intended by the majority to imply that it is not the right to intervene but the control actually exer-

cised which is to be considered in determining that issue. The majority's reference to that principle concerns separate legal entities and common ownership, not employee as compared to independent contractor. *American Federation of Television & Radio Artists v. N. L. R. B.*, 149 U.S.App.D.C. 887, 462 F.2d 887 (1972); *Gerace Construction, Inc.*, 193 NLRB 645 (1971), supra.

The petition for enforcement of the Board's order is DENIED.

BROWNING, Circuit Judge, dissenting:

The majority, it seems to me, crosses the line between review and de novo determination. The Board's judgment is not accorded the deference that is its due. It is the Board's function, not the courts', to accommodate the employer's right to transfer his business and the union's right to a stable collective bargaining relationship, and, as part of that task, to evaluate the bona fides of a particular transfer of a particular business. *See NLRB v. Lewis*, 246 F.2d 886 (9th Cir. 1957).

It is improper for a reviewing court to displace the Board's "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 465 (1951). *See also NLRB v. Miller Redwood Co.*, 407 F.2d 1366, 1369 (9th Cir. 1969); *Suprenant Manufacturing Co. v. NLRB*, 341 F.2d 756, 760 (6th Cir. 1965). The Board has made such a choice in this instance. Indeed, a brief consideration of the law and facts will demonstrate that the Board's view of the record is more reasonable than that adopted by the majority.

The Board did not find that respondent and Cynatron were a "single integrated enterprise" or a "single employer," as the majority suggests. The Board did find that "Shaw and Krutilek were [respondent's] employees, or at best its agents or managers." 216 N.L.R.B. at 1113. The majority finds instead that Shaw and Krutilek were independent contractors.

In distinguishing between independent contractors and employees for purposes of the Act, the Board and the courts must apply general agency principles. *NLRB v. United Insurance Co.*, 390 U.S. 254, 256, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). The principal inquiry is the right of control respondent reserved over Cynatron's operation of the business. *Associated Independent Owner-Operators, Inc. v. NLRB*, 407 F.2d 1383, 1385 (9th Cir. 1969). The majority incorrectly implies that it is not the right to intervene but the control actually exercised that is determinative. The law is to the contrary. *Joint Council of Teamsters No. 42 v. NLRB*, 146 U.S.App.D.C. 275, 450 F.2d 1322, 1327 (1971); *Associated Independent Owner-Operators, Inc. v. NLRB*, supra, 407 F.2d at 1387.

Respondent retained the power to impose a ceiling on operating expenditures, including labor costs, and could therefore effectively control the operation of the theater, including the number and kinds of employees that could be hired. Respondent also tied Cynatron's bookkeeping in with its own and reserved the right to assist Cynatron in buying and booking films. Shaw and Krutilek had no personal investment in the enterprise; they paid no money down and advanced no security for the theater equipment. They brought no previous skill or experience to the business. Their opportunity for profit was closely circumscribed by the sublease; in addition to rental payments and commission on concessions, respondent reserved an amount equal to 75 percent of the net profits.

Under the terms of the sublease, Shaw and Krutilek enjoyed only nominal entrepreneurial independence, faced no risk of loss, had only a limited opportunity for profit, and made no personal investment in the business. These facts indicate an employee and not an independent contractor relationship. *See Brown v. NLRB*, 462 F.2d 699, 703 (9th Cir. 1972). Moreover, their lack of special expertise, the fact that they were paid primarily on a weekly basis, and the fact that respondent supplied all the instrumentalities of the business also suggest they are simply employees. *See* Restatement of Agency 2d § 220.

On this record, the Board's conclusion should be accepted and its order enforced.