85 F.3d 637
 157 L.R.R.M. (BNA) 2064
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SILVER KING BROADCASTING OF SOUTHERN CALIFORNIA, INC., d/b/a
KHSC-TV; Telemation, Inc., Respondents.
 No. 94-70195.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1996.
Decided May 14, 1996.
 
 Before: WALLACE, BROWNING, and FARRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Silver King challenged the vote of Patricia Bondor in a 1992 union representation election. Bondor's vote was determinative of the election, 29 U.S.C. § 159(a), and both the Acting Regional Director and the National Labor Relations Board determined that Bondor was a part-time employee who was eligible to vote rather than an independent contractor. The Board petitions for enforcement of its order against Silver King Broadcasting for violation of §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5). We deny the petition because we conclude Patricia Bondor was an independent contractor ineligible to vote in the representation election.[1]
 
 I.
 
 3
 Bondor began working at Silver King's station in early 1991 as an unpaid college intern. At the end of her internship she approached the program manager about working on a "freelance" basis. Bondor worked for the station on and off in July 1991, primarily as a substitute for employees who were sick or on vacation or when large projects at the station called for extra personnel. Bondor worked for Silver King from 4 to 48 hours a week for 36 of the 48 weeks between June, 1991 and May, 1992. She also worked on other projects unrelated to the station.
 
 
 4
 Until November, 1991, station managers drafted a tentative schedule and called Bondor to determine whether she was available for the times she was scheduled. If she was not, someone else was scheduled in her place. After November, she routinely came to the station and looked at the schedule to find out when she was working. Silver King asserts that Bondor was free to refuse any assignment at any time and that her future employment was not contingent upon her accepting the assignments offered her.
 
 
 5
 Bondor was paid on an hourly basis with a negotiated overtime provision; to be paid she submitted vouchers listing the hours she had worked. Her salary was paid to Maybee Music, a company owned and operated by Bondor. Silver King did not deduct taxes from her checks or provide her benefits.
 
 II.
 A.
 
 6
 To be eligible to vote, Bondor must have been an employee and not an independent contractor. 29 U.S.C. § 152(3). To distinguish employees and independent contractors under the Act, the Court applies general agency principles, N.L.R.B. v. United Insurance Co., 390 U.S. 254, 256 (1968), and specifically the "right to control" test, Merchant's Home Delivery Serv., Inc. v. N.L.R.B., 580 F.2d 966, 973 (9th Cir.1978), under which
 
 
 7
 an employer-employee relationship exists when the employer reserves the right to control not only the ends to be achieved, but also the means to be used in achieving such ends. On the other hand, where control is reserved only as to the result sought, an independent contractor relationship exists.
 
 
 8
 Amber Delivery Service, 250 N.L.R.B. 63, 64 (1980), enforced in relevant part, 651 F.2d 57 (1st Cir.1981); DIC Animation City, 295 N.L.R.B. 989, 991 (1989). The Court should also consider other factors relevant to the nature of the relationship, Waggoner v. Northwest Excavating, Inc., 642 F.2d 333, 336 (9th Cir.1981) vacated on other grounds, 455 U.S. 931 (1982), including the entrepreneurial aspects of the individual's business, risk of loss and opportunity for profit, the individual's proprietary interest in his business, Brown v. N.L.R.B., 462 F.2d 699, 703 (9th Cir.1972), and factors set forth in the Restatement (Second) of Agency § 220(2). Waggoner, 642 F.2d at 336; Merchants Home Delivery, 580 F.2d at 973 n. 11. Ultimately, "[t]he resolution of this question depends on the facts of each case, and no one factor is determinitive." Amber Delivery, 250 N.L.R.B. at 64.
 
 
 9
 We enforce the Board's order if the Board's factual findings are supported by substantial evidence and if the Board applied the law correctly. N.L.R.B. v. Cal-Western Transport, 870 F.2d 1481, 1484 (9th Cir.1989); N.L.R.B. v. Lorimar Productions, 771 F.2d 1294, 1298 (9th Cir.1985). If the Board "made a choice between two fairly conflicting views," we uphold its determination "even though the court would justifiably have made a different choice had the matter been before it de novo." United Insurance, 390 U.S. at 260.
 
 B.
 
 10
 The Acting Regional Director, whose Report the Board adopted, relied almost entirely on two factors inappropriate to the analysis of this case. First, the Director found that Bondor performed the same tasks as regular employees. Similarity of duties can indicate employee status, United Insurance, 390 U.S. at 259; see also Restatement of Agency 2d § 220(h), but "the nature of the work done" is not "determinative" of that status. Associated Independent Owner-Operators, Inc. v. N.L.R.B., 407 F.2d 1383, 1387 (9th Cir.1969) ("Owner-Operators"); see also Boston After Dark, 210 N.L.R.B. 38, 41-43 (1974).
 
 
 11
 Second, although the Director emphasized that Bondor "was required to perform her work in strict adherence to the rules set forth by the FCC, as interpreted by the employer," and "was not free to deviate from the Employer's procedures or those set up by law," those facts are not controlling. As we held in SIDA of Hawaii v. N.L.R.B., 512 F.2d 354, 359 (9th Cir.1975), "the fact that a putative employer incorporates into its regulations controls required by a government agency" does not contribute to employee status. See also North American Van Lines, Inc. v. N.L.R.B., 869 F.2d 596, 599 (D.C.Cir.1989).
 
 
 12
 The Director's Report suggests Bondor was an employee because she was so constrained by both regulations and the company's rules that she had no discretion to perform the job as she saw fit. A similar argument was rejected in Big East Conference, 282 N.L.R.B. 335, 344 (1986). Where the nature of job itself dictates the manner in which it must be performed, the worker's lack of discretion is not an indication of employee status.
 
 
 13
 There is no evidence in the record that Bondor's activities were actually controlled or supervised by Silver King. On the contrary, Bondor, like other master control technicians working the evening and night shifts, operated without supervision. See Owner-Operators, 407 F.2d at 1385 ("common-law agency test rests primarily upon the amount of supervision that the putative employer has a right to exercise over the individual"); see also Associated General Contractors of California, Inc. v. N.L.R.B., 564 F.2d 271, 279 (9th Cir.1977) ("General Contractors ").
 
 C.
 
 14
 The Director improperly applied tests for determining whether a worker is a part time employee. These criteria are intended to distinguish part-time workers from casual workers, not from independent contractors. They do not apply here, where the question is not whether Bondor did the same work as other employees or worked frequently enough to share a community of interest with them, but rather the degree of independence Bondor enjoyed in the way she worked.
 
 D.
 
 15
 Where, as the Director found, Bondor's work was "indistinguishable from the work of the other master control employees," and the method by which she reached the desired result was largely predetermined by the nature of the work, other indicia of independent contractor status become more important. These other factors do not support the Board's finding that Bondor was an employee rather than an independent contractor.
 
 
 16
 There is no evidence Bondor had an expectation of continuing employment at Silver King or a "permanent working arrangement" with the station under which she could continue to work as long as her performance was satisfactory. United Insurance, 254 U.S. at 259; see also Owner-Operators, 407 F.2d at 1386. In fact, Bondor was hired only on an as-needed basis to fill in for other employees; after a program manager was hired, Bondor was no longer used as a freelancer. Thus, the Director's reliance on Bondor's regular work until May, 1992 was misplaced.
 
 
 17
 A worker's ability to choose when and if to work is an important indicator of independent contractor status. Big East Conference, 282 N.L.R.B. at 343; see also Boston After Dark, 210 N.L.R.B. at 43; General Contractors, 564 F.2d at 271. While the record is not entirely clear on this issue, the station manager testified that Bondor always had the right to refuse work, and that testimony is consistent with the station's practice of calling Bondor to see if she was available before scheduling her.
 
 
 18
 Other evidence shows that Bondor was an independent contractor. Silver King provided no benefits to Bondor. Cf. United Insurance, 390 U.S. at 259. Silver King withheld no taxes from payments to Bondor; although that factor is not determinative, as the Board noted, Miller Road Dairy, 135 N.L.R.B. 217, 220 (1962), it suggests independent contractor status. General Contractors, 564 F.2d at 282. Bondor negotiated her own pay rate. See id. She was free to work outside Silver King's station and did so. See DIC Animation City, 295 N.L.R.B. 989, 991 (1989). Finally, Bondor was a skilled, licensed technician. Cf. United Insurance, 390 U.S. at 259.
 
 
 19
 Other aspects of Bondor's employment do not clearly militate in favor of finding independent contractor status. Although Bondor operated her own service provider, Maybee Music, see United Insurance, 390 U.S. at 259, there is no evidence that Maybee Music had any significance as an independent business. It was not a separate referral service, as were the providers in General Contractors, 564 F.2d at 279, or Owner-Operators, 407 F.2d at 1385-86. Nor did Bondor's business shoulder any risk of loss as a result of her work for Silver King. Cf. Brown, 462 F.2d at 703; Merchant's, 580 F.2d at 975. Bondor came to the station and worked on its equipment, rather than making a substantial economic investment in her business. Cf. Merchant's, 580 F.2d at 975; General Contractors, 564 F.2d at 280; Brown, 462 F.2d at 704; Owner-Operators, 407 F.2d at 1385-86.
 
 
 20
 Overall, however, the evidence indicates Bondor was an independent contractor rather than an employee of Silver King. The Director impermissibly relied on regulatory constraints on Bondor's performance of her duties, and other irrelevant considerations used to distinguish part-time employees from casual employees. The Director did not consider those factors which show that Bondor is an independent contractor. The Board's determination that Bondor was an employee rather than an independent contractor was not supported by substantial evidence.
 
 
 21
 Because Bondor was an independent contractor, she was ineligible to vote in the representation election. The Board's petition for enforcement is hereby DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because our finding that Bondor was ineligible to vote determines the outcome of the election, we decline to reach Silver King's arguments that the Union improperly interfered with the election by offering to waive initiation fees and that the Board improperly failed to consider new evidence