William C. WAGGONER et al., etc., Plaintiffs-Appellees and Cross-Appellants,

v.

NORTHWEST EXCAVATING, INC., etc., Defendant-Appellant and Cross-Appellee.

Nos. 78–2816, 78–2984.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 18, 1980.

Decided April 20, 1981.

Rehearing Denied May 15, 1981.

Wayne Jett, Los Angeles, Cal., for Waggoner.

James G. Johnson, Hill, Farrer & Burrill, Los Angeles, Cal., on brief; Stanley E. Tobin, Los Angeles, Cal., argued, for defendant-appellant and cross-appellee.

Before PREGERSON and NELSON, Circuit Judges, and TURRENTINE,* District Judge.

PREGERSON, Circuit Judge:

This action was brought by the Trustees of four union trust funds to recover employee fringe benefit contributions from Northwest Excavating, Inc. The Trustees contend that Northwest should have made payments to the trust funds based on the hours worked by one Frank Sandoval and his helpers, and by several owner-operators of construction equipment. After a two-day trial, the district court held Northwest liable solely for contributions for the hours worked by Sandoval and his helpers. The district court declined to award attorney's fees and costs to either party. Both sides appeal.

I. *Facts*

Northwest Excavating, Inc. is a member of the Southern California General Contractors Association, a multi-employer group that bargains collectively on behalf of its members with Local 12 of the International Union of Operating Engineers. As a member of the Association, Northwest signed the Master Labor Agreement (MLA) negotiated between Local 12 and the Association for the years 1974–1977 and 1977–1980. Among other things, the MLA obligates Northwest to pay to the employee benefit trust funds a certain contribution for each hour worked under the MLA by Northwest's employees.

Northwest is primarily engaged in the business of renting construction equipment with operating personnel to building contractors in the construction industry. After receiving a request from a contractor for equipment and operating personnel, Northwest will dispatch its own equipment and personnel, if available. If either or both are unavailable, Northwest then will dispatch independent owner-operators to do the work. The fees earned by the independent owner-operator are paid by the general contractor to Northwest who then tenders the fee to the owner-operator, less a seven percent brokerage commission.

Before November 1975, Northwest employed several people to repair and maintain its own equipment. In November 1975, however, Northwest hired Frank Sandoval and his helpers to perform the repair and maintenance work. Since 1971, Sandoval has been doing business as Sandoval Equipment Repair.

In 1977 the Trustees of Local 12's employee benefit trust funds informed Northwest that it owed contributions for hours worked by Sandoval, his helpers, and the independent owner-operators Northwest dispatched when its own operators and equipment were unavailable. Northwest refused to contribute, arguing that Sandoval, his helpers, and the owner-operators were independent contractors, not employees, within the meaning of the MLA. The Trustees filed suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover the disputed payments. After a two-day trial, the Honorable Robert J. Kelleher concluded that although Sandoval, his helpers, and the owner-operators are independent contractors, Northwest

---

* The Hon. Howard B. Turrentine, United States District Judge for the Southern District of California, sitting by designation.

**336**

breached the MLA by employing Sandoval instead of Northwest's own employees to perform the repair work. The court ordered Northwest to tender to the Trustees an amount equal to what the funds lost by virtue of Sandoval's employment. That amount was stipulated to be $18,993.53.

## II. *Trustee's Appeal*

The district court found that owner-operators dispatched by Northwest to general contractors were not Northwest's employees but rather were independent contractors. The parties agree that independent contractors, as such, are excluded from the scope of the MLA by virtue of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), authorizing employer contributions to trust funds solely on behalf of employees. The district court also found that although the MLA requires the "Contractor" to put owner-operators on its payroll as of the second day of work, the term "Contractor" refers to general contractors, not to Northwest acting as a broker. The Trustees argue that these two findings are clearly erroneous.

In distinguishing an employee from an independent contractor, courts apply common law principles of agency to the factual context of each case. *NLRB v. United Insurance Co. of America*, 390 U.S. 254, 256, 88 S.Ct. 988, 989, 19 L.Ed.2d 1083 (1968).[1] In addressing the issue, this court considers certain factors set forth in the Restatement (Second) of Agency § 220(2):

(a) the extent of control which, by the agreement, the master can exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular operation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Brown v. NLRB*, 462 F.2d 699, 705 n. 10 (9th Cir.), *cert. denied*, 409 U.S. 1008, 93 S.Ct. 441, 34 L.Ed.2d 301 (1972). Specifically, this court has stated that the common law agency test rests primarily on the "amount of supervision that the putative employer has a right to exercise over the individual, particularly regarding the details of the work." *Associated Independent Owner-Operators, Inc. v. NLRB*, 407 F.2d 1383, 1385 (9th Cir. 1969); *SIDA of Hawaii, Inc. v. NLRB*, 512 F.2d 354, 357 (9th Cir. 1975). This factor, however, must be tempered by other considerations relevant to the relationship in its entirety. *Associated General Contractors of California, Inc. v. NLRB*, 564 F.2d 271, 279 (9th Cir. 1977); *Merchants Home Delivery Service, Inc. v. NLRB*, 580 F.2d 966, 973 (9th Cir. 1978) ("Other factors which this court has considered are the entrepreneurial aspects of the individual's business; risk of loss and opportunity for profit; and the individual's proprietary interest in his business.").

1. *NLRB v. United Insurance Co. of America* applied common law agency principles to the term "employee" found in section 2(3) of the National Labor Relations Act, 29 U.S.C. § 152(3). The trust funds are established on behalf of "employees" pursuant to section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). Section 501 of the Labor Management Relations Act, 29 U.S.C. § 142, provides that when used in that Act, the term "employee" shall have the same meaning as when used in the National Labor Relations Act. Therefore the cases interpreting the term "employee" under the National Labor Relations Act are applicable to the analysis here.

■ The district court correctly concluded that the owner-operators were independent contractors and not employees of Northwest. Each owner-operator dispatched by Northwest was not required to accept the offered construction work. Each was also free to render similar services to other contractors. Each owner-operator set his equipment rental rate with Northwest, but was free to renegotiate the rate with the general contractor if the work proved more difficult or extensive than anticipated. Each was supervised, if at all, by the general contractor, not by Northwest, as to the hours, the extent, and the performance of his work. Northwest's only involvement in the employment relationship was to provide timecards to record the hours worked. The timecards were returned by the owner-operators to Northwest who then billed the general contractor for the services rendered. The rate billed was an hourly rate combining the equipment usage fee with the charge for the operator's labor. The entire payment—less a seven percent brokerage commission—was remitted by Northwest to the owner-operator. Since Northwest may exercise little, if any, supervision over the owner-operators or their equipment, but merely participated in the employment relationship between the general contractor and the owner-operators by negotiating the initial rate for the equipment and the operator, the district court correctly concluded that the owner-operators were independent contractors and not Northwest's employees.

Notwithstanding the district court's conclusion, the Trustees argue that the MLA required that owner-operators eventually become Northwest's employees even though they began their jobsite work as independent contractors. The relevant provisions of the MLA provide:

The Owner-Operator shall become a bona fide employee of the Contractor as defined in the Agreement upon reporting for work on the second consecutive working day; such employee status to be effective from the first hour of work performed on the preceding working day. The term CONTRACTOR (or EMPLOYER) shall refer to a person, firm or corporation, party to this AGREEMENT.

The Trustees argue that "Contractor" refers to Northwest as a signatory of the MLA and requires Northwest to place owner-operators on its payroll. Northwest, on the other hand, asserts that the MLA requires the general contractors for whom owner-operators work to include them on the general contractors' payrolls. The district court found that the MLA requires that general contractors, not Northwest acting as a broker, treat owner-operators as employees and therefore pay the appropriate trust fund contributions.

■ The construction of a contractual provision is a question of law subject to our de novo review. *Transport Indemnity Co. v. Liberty Mutual Insurance Co.*, 620 F.2d 1368, 1370 (9th Cir. 1980); *Republic Pictures v. Rogers*, 213 F.2d 662 (9th Cir.), *cert. denied*, 348 U.S. 858, 75 S.Ct. 83, 99 L.Ed. 676 (1954). After reviewing the record, we find the district court's interpretation of the MLA to be reasonable and correct.

III. *Northwest's Appeal*

■ The district court found that Frank Sandoval was also an independent contractor and as such could not be considered an employee of Northwest. Under the Restatement guidelines set forth above, this conclusion is correct. Sandoval owns his business and has other customers besides Northwest. Sandoval sets his own hours and billing rates and is not supervised by any of his customers, including Northwest, except to the extent that the customer dictates what it wants accomplished. Although Northwest does lease its fully-equipped facilities to Sandoval, who drives a truck insured and owned by Northwest, there is no evidence that Northwest controls or has the power to control Sandoval who ran his own heavy duty repair business for over four years before acquiring Northwest as a customer. Accordingly we affirm the district court's finding that Sandoval was an independent contractor.

We also affirm the district court's finding that, under the MLA, Northwest was obli-

gated to employ its own employees for repair work and that therefore it breached the MLA by employing Sandoval. The ·MLA provides in pertinent part:

> Nothing in this Agreement shall limit the right of Contractors to utilize machinery and equipment dealers to perform major repairs on machinery and equipment on or off the jobsite. All other maintenance and repairs which are normally and customarily performed by persons in the classification of Heavy Duty Repairman/Welder shall be performed by employees covered by this Agreement. . . .

At trial it was established that Sandoval does routine repair work previously done by his predecessor, Hutchison, a heavy duty repairman who was a union employee of Northwest. Initially, Hutchison worked for Northwest without joining the union. His non-union employment was the subject of grievance proceedings. As a result of the proceedings, Northwest began contributing to the trust funds on Hutchison's behalf. The record reflects that Sandoval characterizes his occupation as "heavy duty repairman/welder" and uses the tools of a working mechanic in that classification. Thus the district court properly found that Northwest breached the MLA by assigning routine repair work to Sandoval.[2]

### IV. Costs, Attorney's Fees, and Liquidated Damages

■ The district court declined to grant attorney's fees, costs, or liquidated damages to either party. Northwest argues that it should have been awarded fees under Cal. Civ.Code § 1717 which states:

In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), prohibits a federal court from awarding attorney's fees under state statutes allowing such fees unless the court's jurisdiction is based upon diversity of citizenship. Therefore section 1717 is inapplicable to the instant case. Northwest argues that section 1717 applies here by quoting *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957), to the effect that "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." Northwest argues that the mutuality requirement embodied in Cal.Civ. Code § 1717 assures that parties to collective bargaining agreements, as well as third party beneficiaries thereof, will not be coerced into abandoning good faith, meritorious defenses to section 301 claims, and that section 1717 is certain to temper the invocation of federal jurisdiction for the enforcement of questionable contract claims.

We read *Alyeska*, however, as imposing strict limits on the use of state law to support attorney's fees awards. Those limits were not overborne by the federal environmental policies asserted by the Wilderness Society in *Alyeska*. Nor are those limits overborne by the policies asserted by

---

2. Northwest asserts that the district court should have refused to enforce the MLA on the theory that the MLA embodied an unfair labor practice forbidden by section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e). We have previously held that "district courts may not decide, independent of the NLRB, the merits of an unfair labor practice defense to enforcement of a collective bargaining agreement in a section 301 action." *Waggoner v. R. McGray, Inc.,*, 607 F.2d 1229, 1235 (9th Cir. 1979). *See also Orange Belt District Council of*

*Painters No. 48 v. Maloney Specialties, Inc.,* 639 F.2d 487, 491 (9th Cir. 1980). Northwest attempts to distinguish *Waggoner* on the ground that, unlike the employer in *Waggoner,* Northwest filed unfair labor practice charges with the NLRB which were later dismissed. Northwest's distinction is unpersuasive. Collateral relitigation of charges dismissed by the NLRB is inconsistent with the policies expressed in *Waggoner*; accordingly, we decline to entertain Northwest's section 8(e) defense.

Northwest in this case. In fact, federal labor policy supports the district court's decision to decline to award fees under section 1717. "Courts must always evaluate litigation under 301(a) with an eye to the policy of uniformity which that statute embodies." *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979). Uniformity would be defeated, with few, if any, countervailing benefits, by applying fifty different state laws on the issue of attorney's fees. Of course, this example is distinguishable from the situation where the parties provide for attorney's fees in their collective bargaining agreement. There, the federal labor policy of enforcing the parties' intent as expressed in their negotiated agreement is paramount. *Cf. Waggoner v. R. McGray, Inc.*, 607 F.2d 1229, 1236 (9th Cir. 1979) ("Courts and arbitrators are permitted to resolve disputes governed by the terms of collective bargaining agreements despite potential conflicts with the NRLB ... because of the national labor policy favoring resolution of disputes through mechanisms established by the parties to the disputes."). The district court's denial of attorney's fees and costs to Northwest is affirmed.

On the other hand, the district court's denial of attorney's fees, costs, and liquidated damages to the Trustees is reversed. Unlike Northwest, who based its claim for fees on state law, the Trustees base their claim on the following provision of the MLA:

> All signatory Employers found to be delinquent shall pay for all legal and auditing costs in connection with such delinquency, plus liquidated damages in the amount of twenty-five dollars ($25.00) or ten percent (10%) of the total sums of the contributions, whichever is greater to the Operating Engineers Health and Welfare Fund.

The district court found that this provision of the MLA applies only when an employer fails to contribute to the trust funds on behalf of its employees and not when the employer fails to contribute on behalf of wrongfully hired independent contractors and their employees who displace union members.

We agree with the Trustees that the district court read the MLA too narrowly. On remand, the district court should determine the amount of attorney's fees, costs, and liquidated damages to be awarded to the Trustees by virtue of the delinquency that resulted when Northwest wrongfully hired Sandoval and his helpers to perform protected union work.

AFFIRMED in part and REVERSED AND REMANDED in part; parties to bear their own costs on appeal.