154 F.3d 1072
 159 L.R.R.M. (BNA) 2254, 98 Cal. Daily Op.
Serv. 7038,
98 Daily Journal D.A.R. 9729
 MacArthur CARIAGA, dba Line Master, Plaintiff-Appellee,
v.
LOCAL NO. 1184 LABORERS INTERNATIONAL UNION OF NORTH
AMERICA; Construction Laborers Trust Funds for
Southern California, Defendants-Appellants.
LABORERS INTERNATIONAL UNION OF NORTH AMERICA, HIGHWAY AND
STREET STRIPERS, LOCAL UNION 1184, AFL-CIO; Laborers Health
and Welfare Fund for Southern California; Construction
Laborers Pension Trust for Southern California;
Construction Laborers Vacation Trust for Southern
California; Laborers Training & Re-training Trust Fund for
Southern California; Fund for Construction Industry
Advancement; Center for Contract Compliance; Laborers
Contract Administration Trust Fund for Southern California,
Plaintiffs-Appellants,
v.
MacArthur CARIAGA, Defendant-Appellee.
 Nos. 97-55188, 97-55958.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1998.
Decided Sept. 9, 1998.
 
 Alexander B. Cvitan, J. David Sackman, Reich, Adell, Crost & Cvitan, Los Angeles, California, for plaintiffs/appellants.
 
 
 1
 Joel R. Bryant, William L. Miltner, Perkins & Miltner, San Diego, California, for defendant/appellee.
 
 
 2
 Appeals from the United States District Court for the Central District of California; Ronald S. Lew, District Judge, Presiding. D.C. Nos. CV-96-04037-RSWL, CV-96-03678-RSWL.
 
 
 3
 Before: HUG, Chief Judge, KOZINSKI, Circuit Judge, and FITZGERALD,* District Judge.
 
 FITZGERALD, Senior District Judge:
 
 4
 On November 30, 1992, MacArthur B. Cariaga, dba Line Master, entered into a written subcontract with C.C. Myers in which Line Master agreed to perform paint striping work on a highway construction project for the California Department of Transportation. Paragraph 16 of the subcontract agreement provided:
 
 
 5
 Subcontractor shall, to the extent permissible under federal and any applicable state laws, comply with and be bound by such terms and conditions of [Myers'] labor agreements as are applicable to the work to be done hereunder, including, without limitation, the terms and provisions of any such agreements providing for the assignment of work or the settlement of jurisdictional disputes and the payment of contributions to Union Trust Funds and the posting of all surety bonds required by [Myers'] labor agreements.
 
 
 6
 At the time Myers entered into the subcontract with Line Masters, Myers was signatory to a multi-employer collective bargaining agreement entered into between various general contractors and the Laborers International Union of North America, Highway and Street Stripers. The collective bargaining agreement, knows as the Master Labor Agreement (MLA), provides for the arbitration of disputes by a Laborers' Joint Arbitration Board (LJAB).
 
 
 7
 Line Master began the highway striping work in January 1993 and completed the project in August 1995. On February 12, 1996, the Laborers filed a charge before the LJAB claiming that Line Master had failed to comply with MLA requirements to pay contributions to Union Trust Funds. The LJAB held an arbitration hearing on February 29, 1996 and found that Line Master had violated the MLA. The LJAB awarded damages to the Laborers and the Union Trust Funds.
 
 
 8
 On May 29, 1996, Line Master filed in Los Angeles Superior Court a petition to vacate the LJAB award. At the same time, the Laborers filed a complaint to confirm the arbitration award in the United States District Court for the Central District of California. On June 7, 1996, the Laborers removed Line Master's state court petition to vacate the LJAB award to the United States District Court for the Central District of California. Both cases were eventually assigned to Judge Ronald S.W. Lew.
 
 
 9
 On November 18, 1996, the district court granted Line Master's petition to vacate and denied the Laborers' motion to confirm the LJAB award. On January 8, 1997, the Laborers' appealed the district court's order granting Line Master's petition to vacate the LJAB award. The appeal was dismissed without prejudice to reinstatement because the district court had yet to rule on the Laborers' claim for delinquent contributions. On July 14, 1997, the district court entered final judgment in favor of Line Master and against the Laborers. On July 18, 1997, the Laborers appealed the district court's order denying its motion to confirm the LJAB award. On the same date, the Laborers moved to reinstate its appeal of the district court's order granting Line Master's petition to vacate the LJAB award. We granted the motion to reinstate. Both appeals were timely filed and we have jurisdiction under 28 U.S.C. § 1291.
 
 
 10
 The Laborers argue that the appeals are governed by the Labor Management Relations Act. The LMRA is limited to "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The appeals, however, involve the interpretation of a subcontract between two employers Line Master and Myers, and thus are governed by California contract law.
 
 
 11
 The interpretation and meaning of contract provisions are questions of law reviewed de novo. HS Servs., Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 644 (9th Cir.1997). A district court's findings of fact are reviewed under the clearly erroneous standard. Adler v. Federal Republic of Nigeria, 107 F.3d 720, 729 (9th Cir.1997).
 
 
 12
 The central issue is whether Line Master, through paragraph sixteen of its subcontract with Myers, agreed to be bound to the MLA arbitration procedures. If the subcontract incorporated by reference the MLA, then Line Master is bound to the MLA. Line Master is bound by the arbitration award of the LJAB only if the LJAB had jurisdiction over the dispute. Beach Air Conditioning & Heating v. Sheet Metal Workers Int'l Ass'n, Local 102, 55 F.3d 474, 476 (9th Cir.1995). Because arbitration is a matter of contract, a party will not be required to submit to arbitration unless the party has agreed to do so. Id.
 
 
 13
 Under California law, for one document to incorporate another document by reference, "[t]he reference to the incorporated document must be clear and unequivocal and the terms of the incorporated document must be known or easily available to the contracting parties." Slaught v. Bencomo Roofing Co., 25 Cal.App.4th 744, 748, 30 Cal.Rptr.2d 618, 621 (1994) (citations omitted).
 
 
 14
 Chan v. Drexel Burnham Lambert, Inc., 178 Cal.App.3d 632, 223 Cal.Rptr. 838 (1986) speaks to the central issue between Line Master and Laborers. In Chan, a stockbroker, worked for Drexel Burnham, a brokerage firm. As a condition of her employment, Chan signed a document in which she agreed to "abide by the Statute(s), Constitutions(s), Rule(s), and By-Laws as any of the foregoing are amended from time to time of the agency jurisdiction or organization with or to which I am filing or submitting this application; ..." Chan, 178 Cal.App.3d at 636, 223 Cal.Rptr. 838. Chan submitted her stockbroker application to the New York Stock Exchange, which had a rule providing that controversies involving employment termination would be submitted to arbitration.
 
 
 15
 Chan was terminated from her position with Drexel Burnham and brought an action alleging wrongful discharge from employment. Drexel Burnham then petitioned to compel arbitration under the arbitration provision of the NYSE.
 
 
 16
 Noting that it did not mention arbitration, the NYSE, or the NYSE rule requiring arbitration, the Chan court held as a matter of law that the document "failed to clearly and unequivocally refer to the incorporated document.... [T]he reference did not identify any document or source by title. The reference was amorphous, and did not guide the reader to the incorporated document." Id. at 643, 223 Cal.Rptr. 838. Because the document did not incorporate by reference the NYSE arbitration rule, the appellate court affirmed the trial court's denial of Drexel Burnham's petition for arbitration.
 
 
 17
 Another analogous case is Spellman v. Securities, Annuities & Ins. Serv., Inc., 8 Cal.App.4th 452, 457, 10 Cal.Rptr.2d 427 (1992). Spellman, signed an employment contract as an account executive with the defendant, and agreed to "strictly adhere to the Rules of Fair Practice of the National Association of Securities Dealers, Inc., as set forth in the NASD Manual ..." 8 Cal.App.4th at 455, 10 Cal.Rptr.2d 427. The rules cross-referenced the NASD Code of Arbitration which required arbitration of disputes among members of the NASD. Spellman also signed a form which read: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm...." Id. at 456, 10 Cal.Rptr.2d 427.
 
 
 18
 Spellman was fired and filed suit for wrongful termination. Defendant then filed a petition to compel arbitration. After considering the documents at issue, the Spellman court held that "[t]he employment contract here ... 'clearly referred to and identified the incorporated document wherein the arbitration clause appeared.' " Id. at 458, 10 Cal.Rptr.2d 427 (quoting Chan, 178 Cal.App.3d at 642, 223 Cal.Rptr. 838).
 
 
 19
 Of the two cases discussed above, Chan is most closely analogous to the dispute between Line Master and the Laborers. Paragraph sixteen of the subcontract between Myers and Line Master, like the document in Chan, fails to clearly and unequivocally incorporate by reference the MLA arbitration procedure used by the LJAB. Although paragraph sixteen makes general reference to the "terms and conditions of Contractor's labor agreements," it makes no reference whatsoever to the Laborers, the MLA, or the arbitration procedures of the MLA. Paragraph sixteen, like the document in Chan is amorphous and does not "guide the reader" to the incorporated document.
 
 
 20
 Moreover, as noted by the district court, the subcontract not only fails to meet the clear and unequivocal standard, but also fails under the requirements of the MLA. The MLA requires that subcontract agreements contain the following provision:
 
 
 21
 The subcontractor accepts and agrees to be bound by the procedures for settling jurisdictional disputes as set forth in Article IV of this Agreement. The subcontractor agrees that he will bind his subcontractor to said procedures in the same manner and to the same effect as provided with respect to him.
 
 
 22
 MLA at 17 p F.
 
 
 23
 Article IV of the MLA provides for the settlement of disputes by the LJAB. By omitting the arbitration provision from the subcontract, Myers failed to indicate to Line Master an intent to incorporate by reference the arbitration procedures.
 
 
 24
 Finally, the Laborers argue that Line Master is liable for delinquent contributions to the union trust funds. Because Line Master is not a signatory to the MLA, it is not an "employer" for purposes of ERISA § 515 or LMRA § 301.
 
 
 25
 We conclude that the subcontract agreement between Myers and Line Master failed to incorporate by reference the MLA or the requirement of arbitration by the LJAB. The district court's order granting Line Master's petition to vacate the LJAB award (No. 97-55188) is affirmed. The district court's order denying the Laborers' motion to confirm the arbitration award (No. 97-55958) is also affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior District Judge for the District of Alaska, sitting by designation