Scott FISCHER, Plaintiff–Appellant,

v.

SJB–P.D. INC., a California corporation, dba Cedar Creek Inn; Svenja Bienlefeld; Michael Viliunas, Defendant–Appellee.

No. 98–56586.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2000

Filed June 15, 2000

1116

Thomas E. Frankovich, and Richard K. Jolliffe, San Francisco, California, for the plaintiff-appellant.

Seyamack Kouretchian, Los Angeles, California, for the defendants-appellees.

Before: HUG, Chief Judge, FERGUSON, Circuit Judge, and RESTANI,[1] Judge.

FERGUSON, Circuit Judge:

Plaintiff Scott Fischer ("Fischer") appeals the district court's order denying his request for attorney's fees. The district court ruled that Fischer was not entitled to attorney's fees because he was not the "prevailing party." It alternatively stated that even if he had prevailed, it would still deny Fischer's fee application because his request was excessive and poorly documented. Because we disagree with both conclusions, we REVERSE and RE-MAND for further proceedings consistent with this opinion.

## I. BACKGROUND

The facts of this case are straightforward. Fischer is a blind person who uses a service dog to help him get around. On November 1, 1996, Fischer and his parents went to the Cedar Creek Inn ("Inn") in Palm Desert, California to have dinner. Fischer claims that when he arrived, two employees refused to allow him to enter the restaurant with his service dog. Based on these facts, Fischer filed suit against the Inn for violations of the Americans with Disabilities Act ("ADA") and California disability access law. The complaint sought injunctive relief under the ADA and compensatory damages under state law.

A little over a year after the suit was filed, the parties settled the ADA claim. As part of the settlement agreement, the Inn agreed to print a four-paragraph statement explaining its policy of nondiscrimination toward people with disabilities. Included in the nondiscrimination statement was a sentence specifying that blind people who use service dogs must be given full and equal access to the Inn. The Inn also agreed to post the new nondiscrimination policy "conspicuously" throughout its business and to insert the statement into its policy manual to be read by all Inn employees, agents, and representatives.

Following the settlement of the ADA claim, the district court declined to exercise jurisdiction over the state law claims and dismissed the remainder of the case. Fischer then filed a motion for attorney's fees and costs pursuant to the settlement agreement and 42 U.S.C. § 12205. In the application, Fischer's attorney claimed that he had worked 96.7 hours at a rate of $335 per hour for a total of $32,395. Fischer's attorney also requested costs in the amount of $2,644.34 and additional money for his support staff. His total fee request was $38,066.34.

**1.** Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

After reviewing the application, the district court denied the fee request in its entirety. The Court ruled that Fischer was not a "prevailing party," and that even if he was, it would still deny the fee application because Fischer's request was excessive and poorly documented. Fischer now appeals that decision.

## II. DISCUSSION

### A. Standard of Review

We review an award of attorney's fees for an abuse of discretion. *Corder v. Gates*, 104 F.3d 247, 249 (9th Cir.1996). The district court's factual determinations will not be set aside absent clear error. *Id.* Any element of legal analysis which figures in the district court's decision is reviewed *de novo*. *Id.*

### B. Prevailing Party Status

The first issue we must decide is whether Fischer was the "prevailing party." Under the test articulated in *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Id.* at 113, 113 S.Ct. 566. In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do. *See id.*

Applying this rule to the facts of this case, it is clear that Fischer is a "prevailing party." The settlement agreement in this case includes an equitable relief provision which requires the Inn to print a four paragraph, 430 word statement describing its policy of nondiscrimination toward people with disabilities. Included in the policy statement is a sentence that specifically informs its readers that individuals who use service dogs must be given full and equal access to the

Inn. The settlement agreement also requires the Inn to post the policy "conspicuously" for all to see, and to insert the statement into the Inn policy manual which is read by all of its employees, agents and representatives. If the Inn fails to perform these obligations, Fischer can return to court and force the Inn to uphold its end of the settlement. Because Fischer has an enforceable settlement that requires the Inn to do something it otherwise would not be required to do, Fischer is a "prevailing party."

The Inn offers a number of reasons why Fischer should not be considered a "prevailing party." None of them have merit. First, the Inn argues that Fischer cannot be the prevailing party because he did not obtain any monetary relief. This Circuit, however, has squarely addressed this issue and found that a plaintiff can be the prevailing party based exclusively on injunctive relief. *Friend v. Kolodzieczak*, 72 F.3d 1386, 1390 (9th Cir.1995). Monetary relief is not required. *Id.* Based on this clearly established precedent, the Inn's first argument fails.

The Inn next argues that Fischer cannot be the prevailing party because the Inn's "duty" to comply with the ADA was "the same before and after the settlement." The Supreme Court, however, has never framed the prevailing party inquiry in terms of altering a party's "duty" to follow the law. Instead, the Court has focused on whether the plaintiff obtained an enforceable judgment or settlement that requires the defendant to do something he otherwise would not have to do. In this case, the defendant is required to print, publish, and post a new and expanded nondiscrimination policy. Because the defendants would not otherwise have to take these actions, Fischer is the prevailing party.

Finally, the Inn argues that Fischer cannot be the prevailing party because the only thing the lawsuit achieved was to require the Inn to make *minor* changes to

a preexisting nondiscrimination policy. The Supreme Court, however, has made clear that the "prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar*, 506 U.S. at 114, 113 S.Ct. 566. Although the size of the relief may impact the size of the eventual fee award, it "does not affect *'eligibility* for a fee award.'" *Id.* (quoting *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)) (emphasis added). *See also Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir.1995) (stating that "[t]he degree of success is irrelevant to the question whether the plaintiff is the prevailing party"). Because the magnitude of the relief has no effect on Fischer's eligibility for a fee award, the Inn's final argument also fails.

In sum, the settlement agreement required the Inn to (1) print an expanded nondiscrimination policy, (2) insert it into its company manual, and (3) post it conspicuously throughout the business. Because the Inn would not otherwise have had to take these actions, Fischer is the "prevailing party."

### C. Technical or Limited Success

▮ Once the court determines that the plaintiff is the prevailing party, the court must then calculate a reasonable fee award.[2] This usually involves a two-step process. First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933.[3] Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation.[4] *Morales*, 96 F.3d at 363–364. *See also Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045–47 (9th Cir.2000) (discussing the factors that should be considered when deciding whether to adjust the lodestar figure upward or downward).

There is, however, a limited exception to this general rule. In *Farrar*, the Supreme Court explained that, in cases where the civil rights plaintiff receives only limited or "technical" success, the district court can simply award "low fees or no fees" without reciting the *Kerr* factors. *Farrar*, 506 U.S. at 115, 113 S.Ct. 566; *Morales*, 96 F.3d at 362–63. The Supreme Court has instructed that when attempting to determine whether a victory is "technical," the district court must "compare" the relief the plaintiff originally sought in his complaint with the relief he ultimately obtained. *Farrar*, 506 U.S. at 114, 113 S.Ct. 566. "Such a comparison promotes the court's 'central' responsibility to 'make the

---

2. At oral argument, the Inn's attorney argued that even if Fischer is the prevailing party, the district court still had the "discretion" to deny his fee request. This statement, however, is not entirely accurate. The Supreme Court has explained that in civil rights cases, the district court's discretion is limited. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Specifically, the Supreme Court has stated that "unless special circumstances would render such an award unjust," a prevailing plaintiff "should ordinarily recover an attorney's fee." *Id.* (quoting S. Rep. No. 94–1011, at 4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5912). *See also Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir.1989) (stating that in civil rights cases, "fee awards should be the rule rather than the exception"). Because there are no "special circumstances" in this case, Fischer is entitled to a reasonable fee award.

3. In calculating the lodestar figure, the court must consider the relevant *Kerr* factors. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). *See also Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996) (explaining which *Kerr* factors are relevant to the initial lodestar determination).

4. A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (internal quotations omitted).

assessment. of what is a reasonable fee under the circumstances of the case.' " *Id.* at 114–15, 113 S.Ct. 566 (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)).

Here, the Inn argues that even if Fischer was the prevailing party, the district court correctly denied his fee request in its entirety because he only obtained a "technical" victory. In support of this assertion, the Inn repeats the same arguments it made above. It claims that the victory was "technical" because the litigation only resulted in the Inn adding a few sentences to a preexisting nondiscrimination policy. In our opinion, the Inn's argument misconstrues the goal of the ADA in general and this litigation in particular.

One of the purposes of the ADA is to provide people with disabilities *access* to places of public accommodation. *See* 42 U.S.C. § 12182(a).[5] In an effort to achieve this goal as quickly as possible, Congress created a cause of action for private individuals, but limited the remedies available under that cause of action to "preventative" or equitable relief. *See* 42 U.S.C. § 12188(a)(1).[6] Monetary relief is not an option for private individuals under Title III of the ADA. *Id.* As a result, a plaintiff who files an ADA claim can at most hope to improve access through an injunction.

When a person files an ADA claim, the types of changes he seeks will vary greatly depending on his disability and the type of barrier he confronts. For a person who uses a wheelchair, improved access might mean requiring a business to install a wheelchair ramp or a larger parking spot. For a blind person, however, improved access might involve *educating* people that the law requires them to allow service

dogs into their business. *See* 28 C.F.R. § 36.302(c)(1) (stating that "a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability").

◼ With this as a background, it is easier to understand why Fischer obtained more than a "technical" victory. According to Fischer's complaint, the goal of his ADA claim was to obtain an injunction that would force the Inn to change its alleged policy and practice of denying access to people who use service dogs. In the end that is exactly what he achieved. The settlement agreement includes an equitable relief provision that requires the Inn to insert an expanded nondiscrimination statement into its policy manual and to post the statement conspicuously for all to see. This statement will go a long way toward educating the Inn's employees and agents that it is illegal to deny access to people who use service dogs.

The Inn also claims that this was only a "technical" victory because it already had a nondiscrimination policy. However, as Fischer correctly points out, this policy only pertained to "employment" practices and had nothing to do with the Inn's treatment of "patrons." The old nondiscrimination policy appeared in the employment manual under a section entitled "Terms of Employment." The two-sentence policy statement reads as follows:

> Management subscribes to a policy of equal employment opportunity. There will be no discrimination in this Inn due to race, color, religion, age, sex, or disability.

---

5. 42 U.S.C. § 12182(a) provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

6. 42 U.S.C. § 12188(a)(1) states that the remedies available to individuals subjected to dis-

ability discrimination in public accommodations are limited to those provided in Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(a). Under Section 2000a–3(a), a private individual can only obtain "preventive relief," which means injunctions and temporary restraining orders. Damages are not available under Section 2000a–3(a). *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

Read in context, we believe that the second sentence regarding nondiscrimination applies exclusively to the Inn's employment practices and does not in any way govern the Inn's treatment of *patrons*. This position is reinforced by the depositions of two of the Inn's employees. During their depositions, they were asked whether there was a "written policy" regarding the admittance of service dogs into the Inn. Both employees responded, "No."

In sum, we hold that, in relation to what Fischer originally sought from his ADA claim, the settlement agreement was a significant victory. The settlement forces the Inn to expand its policy of nondiscrimination to include disabled patrons and greatly enhances the number of people who are required to read the policy. As a result, Fischer obtained more than a "technical" victory.

### D. Excessive and Poorly Documented Fee Request

The Inn's final argument is that the district court was justified in denying Fischer's fee application because his request (1) was not based on contemporaneous records, (2) was poorly documented, and (3) was excessive. Although each one of these allegations may ultimately provide the district court with a reason to reduce the fee, we do not believe that they provide the court with a valid basis for denying the fee application in its entirety.

The Inn's first argument is that the district court properly denied Fischer's fee request because his application was not based on "contemporaneous records." This argument, however is too broad. Although we have expressed a "preference" for contemporaneous records, we have never held that they are absolutely necessary. *See United States v. 12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1991). In fact, we have stated that fee requests can be based on "reconstructed records developed by reference to litigation files." *Davis*, 976 F.2d at 1542 (quoting *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir.1983)). Based on this holding, the lack of "contemporaneous records" is not a basis for denying Fischer's fee request in its entirety.

The Inn's second argument is that the district court properly denied Fischer's fee application because his request was "poorly documented." Once again, the Inn's position is too extreme. Although it is true that the fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933, the Supreme Court has also stated that plaintiff's counsel "is not required to record in great detail how each minute of his time was expended." *Id.* at 437 n. 12, 103 S.Ct. 1933. Instead, plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and "identify[ing] the general subject matter of his time expenditures." *Davis*, 976 F.2d at 1542 (quoting *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933).

In this case, Fischer's fee application met this basic requirement. The application provided a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions (16.5 hours), settlement (4.2 hours), and court appearances (1.5 hours). In addition, the application specifically states that it was a "summary compiled from time slips." Presumably, then, more detailed records were readily available. If the district court felt that it needed more detailed information, it should have either requested the information, *see Davis*, 976 F.2d at 1542 (noting that the district court "properly allowed appellees' counsel to supplement their time sheets with additional documentation of their efforts"), or simply reduced the fee to a reasonable amount. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 (stating that the district court can "reduce" the fee award where the documentation is inadequate). Denying a fee application in its entirety was an abuse of discretion.

The Inn's final argument is that the district court properly denied Fischer's fee application because his hourly rate of $335 was "excessive." Although the Inn's characterization is largely true, the proper solution is for the district court to *reduce* it to the "prevailing market rate," not to deny the request entirely. *See e.g. Widrig v. Apfel*, 140 F.3d 1207, 1209–10 (9th Cir. 1998) (finding plaintiff's hourly rate too high and reducing it); *Barjon v. Dalton*, 132 F.3d 496, 500–02 (9th Cir.1997) (same). In this case, the district court never tried to reduce Fischer's attorney's hourly rate to the prevailing market rate. This was an abuse of discretion.

### III. CONCLUSION

In sum, the district court made three incorrect rulings. First, it incorrectly ruled that Fischer was not the "prevailing party." Second, it incorrectly ruled that Fischer's success was only "technical." Finally, it abused its discretion when it failed to compute a lodestar figure and instead simply denied Fischer's fee request in its entirety. For these reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.