241 F.3d 1142 (9th Cir. 2001)
 ROY ALLAN SLURRY SEAL; ROY ALLAN SLURRY SEAL, INC. Plaintiff-counter defendants-Appellees,
v.
LABORERS INTERNATIONAL UNION OF NORTH AMERICA HIGHWAY AND STREET STRIPERS/ROAD AND STREET SLURRY LOCAL UNION 1184, AFL-CIO; LABORERS HEALTH AND WELFARE TRUST FUND FOR SOUTHERN CALIFORNIA; CONSTRUCTION LABORERS VACATION PENSION TRUST FOR SOUTHERN CALIFORNIA; LABORERS TRAINING AND RETRAINING TRUST FUND FOR SOUTHERN CALIFORNIA; FUND FOR CONSTRUCTION INDUSTRY ADVANCEMENT; LABORERS CONTRACT ADMINISTRATION TRUST FUND FOR SOUTHERN CALIFORNIA; CENTER FOR CONTRACT COMPLIANCE, Defendants-counter claimants-Appellants.
 No. 99-55883
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 16, 2000
Filed March 2, 2001
 
 J. David Sackman, Reich, Adell, Crost & Cvitan, Los Angeles, California, for the defendants-counter-claimants appellants.
 Bethany A. Pelliconi, Musick, Peeler & Garrett, LLP, Los Angeles, California, for the plaintiff-counter-defendants-appellees.
 Appeal from the United States District Court for the Central District of California Terry J. Hatter, Jr., Chief District Judge, Presiding. D.C. No.CV-97-02340-TJH
 Before: William C. Canby, Jr., M. Margaret McKeown, and Richard A. Paez, Circuit Judges.
 McKEOWN, Circuit Judge:
 
 
 1
 This case requires us to determine the relationship between a state attorney's fees provision and federal labor law. Specifically, we must consider whether California Civil Code section 1717, which renders reciprocal an otherwise unilateral contractual provision for attorney's fees, is preempted by the federal Labor Management Relations Act ("LMRA"). Because an award of fees under section 1717 would read a new term into the collective bargaining agreement ("CBA"), thereby undermining two primary goals of the LMRA-interpreting CBAs uniformly, and respecting the intentions of the CBA's signatories--we conclude that section 1717 is preempted here. Therefore, we reverse the award of fees, and remand for consideration of whether fees are otherwise available under federal law.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 For many years, Plaintiff/Appellee Roy Allan Slurry Seal ("RASS")[1] has supplied road slurry under subcontract to two general contractors, the R.J. Noble Company ("R.J. Noble") and the Southern Pacific Milling Company ("S.P. Milling"), neither of which is a party to this litigation. Important here, RASS is a non-union contractor.
 
 
 3
 In 1992, the Southern California General Contractors and the Southern California District Council of Laborers entered into a collective bargaining agreement, the Master LaborAgreement ("MLA"). It is undisputed that the MLA bound R.J. Noble, S.P. Milling, and Defendant/Appellant Laborers International Union of North America Highway and Street Stripers/Road and Street Slurry Local Union 1184, AFL-CIO ("the Union").
 
 
 4
 The MLA contained three provisions that are relevant here. First, it provided that signatory employers would not hire nonunion subcontractors. Second, signatory employers would use a union hiring hall. Third, signatory employers would contribute to the Fund for Construction Industry Advancement, the Contract Administration Trust Fund for Southern California, and the Center for Contract Compliance Trust Funds. If an employer became delinquent in its contributions, and a fund incurred legal expenses "in connection with [the] delinquency," the fund would be entitled to attorney's fees. Conversely, if the employer were found not to have been delinquent, then the employer would be entitled to attorney's fees.
 
 
 5
 In 1996, the Union filed grievances against RASS, alleging that RASS had violated the hiring hall and wage and benefit provisions of the MLA. The Union contended that, although RASS was not a party to the MLA, it was nonetheless bound by the Agreement because RASS's subcontracts with R.J. Noble and S.P. Milling incorporated the MLA by reference. In the ensuing arbitrations, the Laborers Joint Adjustment Board ruled in favor of the Union. RASS was ordered to pay back wages to the Union, and back contributions for fringe benefits to the Trust Funds.[2]
 
 
 6
 In April 1997, RASS filed suit in federal court, seeking to vacate the arbitration award. Claiming jurisdiction under the LMRA, RASS contended, among other things, that the arbitrators exceeded their power under the MLA when they ruled against RASS, because RASS was not party to that agreement. In this initial set of claims, RASS was the only plaintiff, and the Union was the sole defendant.
 
 
 7
 In June 1997, the Union and the Trust Funds filed counterclaims to confirm the arbitration awards, and to collect delinquent contributions to the employee benefit plans. They claimed jurisdiction under both the LMRA and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. S 1132(e)(1). This action involved slightly different parties than RASS's original complaint; both the Union and the Trust Funds were counterclaim plaintiffs and, in addition to RASS, Roy Allan was individually named as a counterclaim defendant. The Union and the Trust Funds sought the back wages and unpaid fringe benefit contributions specified in the arbitration award, interest on the award, and attorney's fees.
 
 
 8
 In March 1998, the Union brought a motion to confirm the arbitration awards. While the motion was still pending, we decided Cariaga v. Local No. 1184 Laborers International Union, 154 F.3d 1072 (9th Cir. 1998). In Cariaga, we held that a contract between a general contractor and a subcontractor is interpreted under state law, rather than under the LMRA. Id. at 1074. We also held that under California law, a subcontract does not incorporate a collective bargaining agreement by reference unless the subcontract points specifically to such an agreement. Id. at 1074-75. Soon thereafter, the Union and the Trust Funds filed a supplemental brief in which they conceded that under Cariaga, the S.P. Milling arbitration award should be vacated. They contended, however, that the R.J. Noble award should stand.
 
 
 9
 Little happened in the case until March 1999, when the district court denied the motion to confirm the arbitration awards, and sua sponte vacated the arbitration awards without explanation. The remaining counterclaim was dismissed by stipulation.
 
 
 10
 RASS then moved for attorney's fees under the MLA as augmented by California Civil Code section 1717,[3] seeking 19,500.50 in fees from the Union and the Trust Funds, to whom it referred collectively as "Defendants. " The court awarded RASS $119,392.50 in attorney's fees. As with its order vacating the arbitration awards, the court provided no reason for awarding fees, nor for the particular amount of fees. It simply stated that the motion was granted, ordering "Defendant" to pay fees. The Union and the Trust Funds timely appealed.
 
 
 11
 We review attorney's fees awards for an abuse of discretion. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000). Supporting factual findings are reviewed for clear error; legal determinations are reviewed de novo. Id. We have jurisdiction under 28 U.S.C. S 1291, and we reverse.
 
 II. LMRA PREEMPTION
 
 12
 Section 301 of the LMRA has broad preemptive effect over many state statutes. LMRA S 301, 29 U.S.C. S 185(a).[4] It "displace[s] entirely any state cause of action `for violation of contracts between an employer and a labor organization.' "
 
 
 13
 Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983) (quoting 29 U.S.C. S 185(a)). Likewise, it preempts state law when "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 218 (1985)). And, important here, it mandates that "substantive principles of federal labor law must be para-mount in the area covered by the statute." Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962). This last principle stems from a longstanding concern that federal labor law be uniform, and that collective bargaining agreements be interpreted uniformly. Id. at 103-04.
 
 
 14
 Precisely because of this concern with uniformity, we have previously held that the broad preemptive force of the LMRA applies against California Civil Code section 1717, and we reach the same conclusion here. In Waggoner v. Northwest Excavating, Inc., we considered an action brought by union trust funds to recover trust fund contributions allegedly owed by the defendant employer under an MLA. 642 F.2d 333, 335 (9th Cir. 1981), vacated and remanded on other grounds, 455 U.S. 931 (1982), reaff'd, 685 F.2d 1224 (9th Cir. 1982). Among other issues, we considered the employer's claim that the district court should have awarded attorney's fees under California Civil Code section 1717. We held that attorney's fees were properly denied because Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), "prohibits a federal court from awarding attorney's fees under state statutes allowing such fees unless the court's jurisdiction is based upon diversity of citizenship. " 642 F.2d at 338. Thus, we concluded, "section 1717 is inapplicable to the instant case." Id.
 
 
 15
 We went on to explain that Alyeska "impos[es] strict limits on the use of state law to support attorney's fees awards," and that "federal labor policy supports the district court's decision to decline to award fees under section 1717" because "[u]niformity would be defeated, with few, if any, countervailing benefits, by applying fifty different state laws on the issue of attorney's fees." Id. at 338-39. Thus, as a general matter, section 1717 cannot be invoked as a basis to award attorney's fees in actions under the LMRA. See also Burke v. French Equip. Rental, Inc., 687 F.2d 307, 312 (9th Cir. 1982) (citing Waggoner).
 
 
 16
 For these same reasons, attorney's fees cannot be awarded here under section 1717. As in Waggoner , this was a suit under the LMRA. The Union's initial grievance against RASS stemmed from the provisions of the MLA. RASS's action in the district court was brought under the LMRA to vacate arbitration awards arising out of the MLA, and the counterclaims were premised on the LMRA and ERISA, not state law. More important, RASS expressly relied on the MLA to supports its fee request. It discussed the MLA in its motion, and its motion referred the district court to its Request for Judicial Notice, to which the MLA was attached as an exhibit. Likewise, at oral argument, RASS's attorney acknowledged that the district court had granted fees under the MLA.
 
 
 17
 Because attorney's fees were sought here under the MLA, this case is unlike Cariaga, upon which RASS relies.It is true that both this case and Cariaga share a similar procedural history--both involve a contract between a general contractor and a subcontractor that purports to incorporate the CBA by reference; an arbitrator's ruling that the subcontractor is bound by the CBA; and a union's claim that the case is governed by the LMRA. 154 F.3d at 1073-74. But they differ in one crucial respect. In Cariaga, the only issue was the proper interpretation of the subcontract, an issue governed by state law. Because the subcontract did not specifically incorporate the CBA by reference, the subcontractor was not bound by the CBA. But here, the case has advanced one step further --the substantive contract issues have been resolved under state law, and the only remaining issue is the availability of attorney's fees in RASS's suit under the LMRA to vacate the federal labor arbitration awards. Thus, unlike Cariaga, and contrary to RASS's argument, this motion for attorney's fees cannot fairly be characterized as an action on the subcontract. As a result, Waggoner controls.
 
 
 18
 Moreover, this was not a case in which fees were simply sought under the collective bargaining agreement--a fact that, on its own, would require only an interpretation of the MLA itself, and would not implicate preemption. Rather, RASS sought fees under the MLA as augmented by section 1717. Because RASS was not a "contractor, " it would not have been entitled to fees under the MLA as written.[5] Consequently, it argued that section 1717 rendered mutual the fees provision in the MLA. In short, RASS sought to use a state statute to modify the express terms of the MLA.
 
 
 19
 RASS's effort to claim benefits under the MLA implicates the same policy considerations that led to preemption in Waggoner, and it points to the same result here. Waggoner rested on the concern that CBAs be negotiated in the shadow of uniform statutory interpretation, freeing the parties from disruptive uncertainty that might hamper the bargaining process. See 642 F.2d at 339. This same concern has long animated decisions under section 301, as the Supreme Court has held:
 
 
 20
 The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.
 
 
 21
 Local 174, Teamsters, 369 U.S. at 103. Permitting state law to control here would create just such uncertainty. Any union that sought arbitration against a party who, it later turned out, was not bound by the CBA at issue, might be liable for attorney's fees--depending on the state in which the litigation was filed. See Carpenters Health & Welfare Trust Fund v. Acme Indus., 273 Cal. Rptr. 519, 521 (Cal. Ct. App. 1990) (uniformity rationale supported a finding that section 1717 was preempted: "The possibility of varying legal consequences of a unilateral attorneys fee clause . . . could hinder the process of negotiating and administering a collective bargaining agreement, since labor could not be certain of the attorney fees rights obtained or conceded . . . ."). This is exactly the uncertainty that LMRA preemption was intended to avoid.
 
 
 22
 Finally, the application of section 1717 would run counter to a second major goal of the LMRA--"enforcing the parties' intent as expressed in their negotiated agreement." Waggoner, 642 F.2d at 339. The LMRA emphasizes party autonomy, and the primacy of the collective bargaining agreement. It assumes that the parties negotiate from positions of equal strength, see Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1504 (9th Cir. 1986), and thus works to effectuate their intentions as expressed in the CBA, see Waggoner, 642 F.2d at 339. Section 1717 takes just the opposite approach. Rather than respecting the parties' autonomy, and "enforcing [their] intent as expressed in [the] negotiated agreement," the statute assumes an inequality in bargaining power, and rewrites the terms of the contract in an effort to mitigate that inequality. Milman v. Shukhat, 27 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1994). Given these opposing goals, and because state law is used to augment federal labor law only when it "effectuate[s] . . . federal policy," Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457 (1957); Waggoner, 642 F.2d at 338-39, the LMRA must preempt section 1717 when fees are not available under a CBA but could be available through the operation of section 1717. That is exactly what happened here. Thus, we reverse the fee award, and remand for further consideration.
 
 
 23
 On remand, the district court should determine whether there is any basis under federal law for awarding attorney's fees. Although we express no opinion on the merits of this argument, RASS contended on appeal that both the LMRA and ERISA are alternative bases upon which fees might be awarded. If these issues are raised on remand, and if they are properly before the district court, the claim for attorney's fees under the LMRA should be examined under a bad faith standard, see Wellman v. Writers Guild of Am., West, Inc., 146 F.3d 666, 674 (9th Cir. 1998); and the claim for fees under ERISA should be guided by the factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 452-53 (9th Cir. 1980). If the court determines that fees are available, the Federal Rules of Civil Procedure and our case law require that it set forth its reasons in the form of findings of fact and conclusions of law. Fed. R. Civ. P. 54(d)(2)(C) & 1993 Advisory Committee Note; Hummell, 634 F.2d at 452.
 
 
 24
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 For ease of reference, the corporate entity Plaintiff/Appellee Roy Allan Slurry Seal and the individual Counterclaim Defendant Roy Allan are referred to collectively as RASS, unless otherwise noted.
 
 
 [2]
 The various trusts that are counterclaim plaintiffs/appellants are referred to collectively as "the Trust Funds."
 
 
 [3]
 Under California Civil Code section 1717, any contract that allows only one specified party or the prevailing party to recoup attorney's fees is deemed to apply to any prevailing party:
 In any action on a contract, where the contract specifically pro vides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
 Cal. Civil Code S1717(a)(West 2000).
 Thus, unlike statutory attorney's fees provisions that simply grant fees to prevailing parties, section 1717 does not supply an independent basis for a fee award. Rather, it operates by broadening already-existing contractual fee-shifting provisions. It does so in two ways: 1) by taking unilateral fee-shifting provisions, and rendering them mutual; and 2) by allowing fees to a party who is sued on a contract, and who "defends the litigation `by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' " Santisas v. Goodin, 951 P.2d 399, 406 (Cal. 1998) (quoting North Assocs. v. Bell, 229 Cal. Rptr. 305, 308 (Cal. Ct. App. 1986)).
 
 
 [4]
 That statute provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 29 U.S.C. S185(a).
 
 
 [5]
 The MLA contains one attorney's fees provision:
 Each individual Contractor found to be delinquent [in contributing to the Trust Funds] may be required to pay all legal fees, court costs, and auditing costs in connection with such delinquency. Liquidated damages in the amount of twenty-five dollars ($25.00) per trust or twenty percent (20%) of the amount due, whichever is greater, may also be assessed. In the event that a Court finds that the Contractor is not delinquent then the Contractor shall be entitled to an award of his attorney's fees and cost [sic] from the trust funds.
 Because RASS was not a "Contractor" as defined by the MLA, it could not recover directly under this attorney's fees provision. Thus, RASS argues that because the Union and the Trust Funds could have recovered under this provision had they prevailed, its own success in arguing that it was not bound by the MLA warrants a fee award. As it is unnecessary to our decision, we express no opinion on whether the Union would have been entitled to fees had it prevailed.